[Cite as *Christopher Michael Homes, L.L.C. v. Treillage Residence Owners' Assn., Inc.*, 2014-Ohio-4754.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

CHRISTOPHER MICHAEL HOMES, LLC,  :

    Plaintiff-Appellant,  :  CASE NO. CA2013-12-238

                           :  O P I N I O N

  - vs -                         10/27/2014

                           :

TREILLAGE RESIDENCE OWNERS'  :
ASSOCIATION, INC.,

                           :

    Defendant/Appellee/Third-Party  :
    Plaintiff.                          :

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2011-08-3010

Ulmer & Berne, LLP, Robin D. Miller, 600 Vine Street, Suite 2800, Cincinnati, Ohio 45202, for plaintiff-appellant

Cuni, Ferguson & Levay Co., L.P.A., Lisa M. Conn, 10655 Springfield Pike, Cincinnati, Ohio 45215 and Gallagher, Gams, Pryor, Tallan & Littrell L.L.P., Mark H. Gams, 471 East Broad Street, 19th Floor, Columbus, Ohio 43215-3872, for defendant/appellee/third-party plaintiff

    **PIPER, J.**

    {¶ 1} Plaintiff-appellant, Christopher Michael Homes, LLC (CMH), appeals decisions of the Butler County Court of Common Pleas granting partial summary judgment to defendant-appellee, Treillage Residences Owners' Association, Inc. (Treillage), and finding in

favor of Treillage after a bench trial on remaining issues not disposed of through summary judgment.

{¶ 2} CMH, which is owned and operated by Christopher Cavens, purchased three "bubble" lots in the Treillage development in 2008. The lots, which were previously owned by Cavens' father, were auctioned and CMH was the highest bidder. When a lot is purchased in the Treillage development, the lot owner has an easement to build a home on the lot. Once the home is built, the owner owns only the land directly beneath the home. The remaining land within each lot that contains a house is communally owned by Treillage and is controlled by the Treillage owners' association.

{¶ 3} Treillage enters into terms with the lot owners regarding assessments and fees that each lot owner is responsible for paying, with such funds going toward improvements upon and maintenance of the communal areas. Each owner is given a Declaration regarding the rights and responsibilities of ownership in Treillage. CMH began paying assessments according to the terms of the Declaration soon after purchasing its three lots.

{¶ 4} CMH's lots are located in different parts of the development. Two of the lots are located in the back portion of the development while the other lot is located at the front of the development within view of those entering and exiting the development or driving past it. Over time, CMH's lots located in the back of the development became overgrown, while the lot in public view was maintained by Treillage. CMH complained of the lack of maintenance on the back lots to Treillage, and eventually stopped paying the assessments on all three lots when Treillage did not do anything to maintain the back lots.

{¶ 5} In 2010, Treillage filed liens on all three of CMH's lots with the Butler County Auditor's Office. CMH responded by filing a suit alleging slander of title, violations of due process, and unjust enrichment, as well as a declaratory action asking the trial court to establish Treillage's past and future maintenance obligations. Treillage filed a counterclaim

against CMH to foreclose on CMH's property to satisfy the liens.

{¶ 6} Treillage filed a motion for summary judgment, which the trial court granted in part and denied in part. The trial court granted summary judgment as it related to the slander of title and due process issues, and also awarded Treillage attorney fees. The trial court denied Treillage's motion for summary judgment as it related to CMH's unjust enrichment and declaratory judgment actions. CMH then filed a motion for reconsideration of the trial court's ruling on summary judgment, which the trial court considered but ultimately denied through a written decision.

{¶ 7} The matter proceeded to a bench trial before a magistrate. The magistrate found in favor of Treillage, after recognizing that CMH's unjust enrichment claim had morphed into a breach of contract claim. The magistrate determined that Treillage had not breached its contract with CMH, and that Treillage had no obligation to maintain CMH's lots. CMH filed objections to the magistrate's decision, and informed the trial court that it would file a transcript of proceedings to accompany the objections. However, no such transcript was filed with the trial court. The trial court overruled Treillage's objections and adopted the magistrate's decision in full. CMH now appeals the trial court's decision regarding summary judgment, as well as the ultimate judgment in favor of Treillage, raising the following assignments of error. Because some of the arguments are interrelated, we will address some of CMH's assignments together for ease of discussion.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN GRANTING TREILLAGE'S MOTION FOR SUMMARY JUDGMENT AND AWARDING TREILLAGE ITS ATTORNEYS' FEES.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED IN DENYING CMH'S MOTION FOR RECONSIDERATION OF ITS SUMMARY JUDGMENT DECISION.

{¶ 12} CMH argues in its first two assignments of error that the trial court erred in granting summary judgment in favor of Treillage regarding the slander of title and due process issues.[1]

{¶ 13} This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124. Civ.R.56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 14} The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352,*2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

{¶ 15} CMH argues that summary judgment was improperly granted because genuine issues remained regarding its ability to withhold payment of assessments based upon its dissatisfaction of how two of its lots were being maintained. CMH argues that the two lots in the back of the development were not being properly maintained, while the lot near the front

---

1. We will incorporate the arguments CMH raises in its second assignment of error within our analysis of whether or not the trial court properly granted summary judgment, as the arguments are essentially the same.

of Treillage's entrance was properly maintained so that CMH was justified in withholding the payment of assessments.[2]

{¶ 16} The record is clear and undisputed that the parties are bound by the Second Amendment to Amended and Restated Declaration of Covenants, Conditions, Restrictions and Reservation of Easements for Treillage Residences Owners' Association (Declaration). According to the Declaration, CMH is required to pay assessments to Treillage for each of the three lots it owns, and CMH is not permitted to withhold payment of the assessments based upon its dissatisfaction of lot maintenance.

{¶ 17} According to Article VI of the Declaration, assessments must be paid by *each owner* of a lot.[3] Section 6.1 of the "Assessments" section of the Declaration states, "there are hereby established for the benefit of the Association, its successors and assigns, as a charge on each Lot, certain Assessments for Common Expenses and other expenses." That section goes on to provide that "each Owner, by acceptance of a deed, covenants and agrees to pay such Assessments* * *."

{¶ 18} Neither sentence within the Declaration makes payment of assessments

---

2. CMH makes reference and relies upon various sections of R.C. Chapter 5312, which governs planned communities. However, R.C. Chapter 5312 was not effective until September 10, 2010, approximately nine months *after* CMH stopped paying its assessments. Moreover, there is no language within the legislation that permits a lot owner to withhold assessment payments based upon dissatisfaction of lot maintenance. Even if R.C. Chapter 5312 does not foreclose a lot owner's ability to raise a defense of dissatisfaction when justifying nonpayment of assessments, CMH was permitted to argue such at the bench trial. As will be discussed within CMH's later assignments of error, the trial court allowed CMH to argue breach of contract, thus permitting CMH to assert that its nonpayment of assessments was predicated upon dissatisfaction over the way Treillage failed to maintain the two back lots.

3. The Declaration includes express designations that the original developer of Treillage, Richard Morris, was not subject to assessments unless and until he built a home on any lot that he owned. These sections do not impact CMH in any manner, as CMH was never the developer, or the developer's successor/assignee. CMH also argues that the current developer, David Clinton, is not subject to the assessments. However, the record indicates that Clinton eventually became the developer once Morris lost the property through foreclosure. Treillage entered into a contract with Clinton that Clinton would become the developer in return for not being subject to assessments. Therefore, any arguments CMH makes comparing itself to Morris or Clinton are irrelevant because CMH has never been the developer nor did it acquire the lots directly from Treillage. Instead, the record is clear that CMH purchased its three lots on auction from a previous owner. Moreover, and even if CMH disagrees with assessments not being charged to some owners, such disagreement does not empower CMH to stop paying its assessments.

contingent upon the lot owner's satisfaction of lot maintenance, nor is there any provision permitting a lot owner to withhold assessments for any reason. Instead, the Declaration is expressly clear that each lot owner has a duty to pay the assessments on each lot in order to maintain Treillage as a whole. Section 6.13 expressly provides that "no Owner may exempt himself or herself from liability for payment of the Common Expenses by waiver of the use or enjoyment of the Common Elements or by abandonment of the Lot or Unit against which the Assessments are made." Nothing within the Declaration permits an owner to withhold payment of assessments based upon personal dissatisfaction of how lots are maintained, even if such denies use and enjoyment of the property.

{¶ 19} The Declaration sets forth that the purpose of the assessments is to pay the costs associated with the common expenses within Treillage, such as lawn care, landscaping, snow removal, insurance, legal fees, and improvements upon the common area. No section within the Declaration permits a lot owner to forego payment of assessments based upon dissatisfaction with the performance or nonperformance of maintenance on any lot. This is especially true where the collection of general assessments is for *all* expenses related to common areas, including maintenance of roads, signage, lighting, landscaping, improvements, insurance, attorney fees, and other costs associated with maintaining the development. Even if CMH was unhappy with the way in which two of its three lots were being maintained, nothing in the Declaration permitted CMH to withhold payment on all three of its lots, or to withhold payment for the other benefits conferred upon the lots regarding road maintenance, signage, lighting, insurance, and other matters.

{¶ 20} The Declaration expressly provides that Treillage has the authority to assess late fees, the costs of collection, and reasonable attorney fees expended in order to collect unpaid assessments.[4] The Declaration also sets forth that Treillage may levy a lien against a

---

4. While CMH challenges the trial court's grant of attorney fees, such grant is expressly provided for by the

- 6 -

lot for failure to pay assessments, as well as the costs and reasonable attorney fees expended in pursuing collection of assessment arrearages.

{¶ 21} The record is clear that CMH paid monthly assessments on all three lots it owned, and then stopped paying the assessments on each of the three lots when it became dissatisfied with the way in which the back two lots were being maintained. The Declaration clearly permitted Treillage to levy liens upon the three lots once CMH failed to pay the assessments as agreed upon in the Declaration. While CMH argues that Treillage inappropriately filed the liens, we find no genuine issues of fact remained.

{¶ 22} According to the Declaration, the recording of the Declaration constituted notice and perfection of any lien, and Treillage was permitted to enforce liens absent a filing of notice with the Butler County Recorder. While CMH argues that the timing was improper because Treillage did not wait long enough before filing the liens, the record is undisputed that CMH made its last payment in November 2009, stopped paying its assessments in December 2009, and never paid any assessment again.[5] CMH admitted in its complaint that it stopped making payments and did not make any payments since the date it stopped paying in December 2009. Therefore, Treillage had authority to file the liens based upon the Declaration, and did not violate any provision of the Declaration by filing the liens in the manner in which it did.

{¶ 23} CMH also argues that the amount of the liens created a genuine issue of material fact because the liens include a special assessment that was not considered late

---

Declaration. CMH does not challenge the reasonableness of the fees, only that the fees were granted in the trial court's decision granting summary judgment. Therefore, we have limited our discussion to the fact that the Declaration expressly provides for the collection of attorney fees should Treillage be forced to collect unpaid assessments, rather than on the reasonableness of the fees.

5. The record indicates that Treillage considered it proper to file liens when an account had gone two months delinquent. The record indicates that CMH did not pay its December 2009 assessment and that Treillage filed the liens in January 2010 once the due date had passed for payment of the January assessment. Therefore, CMH was delinquent for two months by failing to pay the December and January assessments. While the current practice is that a three-month delinquency must exist before Treillage will file liens, such a practice was not in place at the time Treillage filed its liens against CMH for failing to pay two months of assessments.

- 7 -

until after the liens were levied. In May 2009, Treillage imposed a $1,500 special assessment. According to the Declaration, the special assessment was due as of June 2009 because Section 6.7.2 of the Declaration provides that a special assessment is effective on the first day of the month following notice of the special assessment being levied. Section 6.7 of the Declaration provides that Treillage has a lien for any assessment against a lot that has been levied. The $1,500 special assessment was levied in May 2009, and was effective against CMH as of June 2009. Even so, Treillage permitted owners to pay the special assessment in either installments or a lump sum, with final payment due no later than May 2010. The fact that Treillage allowed installment payments, however, did not change the fact that the special assessment became effective in June 2009, and had already been levied against CMH. Nor does the ability to make payments change the fact that CMH never paid the special assessment for any of its three lots.

{¶ 24} While Treillage included the special assessment in the lien amount, it did not consider the special assessment late for purposes of adding late fees or other costs associated with collecting the special assessment because the May 2010 final installment deadline had not yet passed by the time Treillage filed the liens in January 2010. Therefore, Treillage was permitted to include the special assessment in its lien because the special assessment had been levied but not yet paid by CMH. Treillage did not charge CMH any late fees or costs for not paying before May 2010, and CMH never paid the special assessments for its three lots. As such, no genuine issue remained regarding the proper amount of the liens.

{¶ 25} CMH also argues that summary judgment was inappropriate because the trial court did not weigh equities before permitting foreclosure. Once a trial court determines that foreclosure is legally sound, "it must then consider the equities of the situation in order to decide whether foreclosure is appropriate." *U.S. Bank, N.A. v. Bryant*, 12th Dist. Butler No.

CA2012-12-266, 2013-Ohio-3993, ¶ 7. Unless the record affirmatively demonstrates that the trial court failed to consider the equities, an appellate court will presume that the trial court properly considered the equities of the situation in order to decide whether foreclosure is appropriate. *First Knox Natl. Bank v. Peterson*, 5th Dist. Knox No. 08CA28, 2009-Ohio-5096, ¶ 22.

{¶ 26} In an attempt to demonstrate that the trial court failed to weigh equities, CMH asserts that foreclosure is inherently inequitable where lot owners are treated differently, with some being exempted from assessments. However, such argument does not affirmatively demonstrate that the trial court failed to weigh the equities where the record upon summary judgment provided the trial court with the facts and circumstances of the assessments, including the fact that some owners were exempt from paying them. The trial court issued decisions on both Treillage's motion for summary judgment and CMH's motion for reconsideration of the trial court's decision granting partial summary judgment. These decisions were made after the trial court considered the record, which included a discussion of who was required to pay assessments. The trial court was well aware of the salient facts, and nothing in the record or within CMH's arguments on appeal demonstrate that the trial court failed to consider the equities before ordering foreclosure.

{¶ 27} After reviewing the record and considering all of CMH's arguments, we find that summary judgment was properly granted. As such, CMH's first and second assignments of error are overruled.

{¶ 28} Assignment of Error No. 3:

{¶ 29} THE TRIAL COURT ERRED IN OVERRULING CMH'S OBJECTIONS TO THE MAGISTRATE'S DECISION.

{¶ 30} Assignment of Error No. 4:

{¶ 31} THE MAGISTRATE ERRED IN HIS CONCLUSION THAT CMH'S UNJUST

ENRICHMENT AND DECLARATORY JUDGMENT CLAIMS ARE PRECLUDED AS A MATTER OF LAW.

{¶ 32} CMH argues in its third and fourth assignments of error that the trial court erred in granting judgment in favor of Treillage on its unjust enrichment and declaratory judgment claims.

{¶ 33} We first note that CMH's unjust enrichment claim morphed during the bench trial into a breach of contract claim. Ohio law is settled that "absent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment * * *." *Quadtek, Inc. v. Foister*, 12th Dist. Warren No. CA2004-09-112, 2005-Ohio-4191, ¶ 22. The record is clear that the parties were bound by the Declaration, and that the Declaration acted as the controlling contract. *O'Bannon Meadows Homeowners Assn., Inc. v. O'Bannon Properties, L.L.C.*, 12th Dist. Clermont No. CA2012-10-073, 2013-Ohio-2395. While CMH raised several arguments regarding breach of the Declaration, it did not assert fraud or illegality rendering its unjust enrichment claim untenable.

{¶ 34} The magistrate recognized that based upon Civ.R. 15(B), an amendment to CMH's complaint could occur to include a breach of contract claim based upon the evidence presented during the bench trial. As such, the magistrate properly moved forward to rule upon the breach of contract claim and declaratory judgment action.

{¶ 35} "To prove a breach of contract claim, a plaintiff must show the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Smith v. Gray*, 12th Dist. Brown No. CA2013-11-011, 2014-Ohio-4175, ¶ 12. In reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *O'Bannon Meadows Homeowners Assn.*, *Inc.*, 2013-Ohio-2395. When ascertaining the intent of the parties, the court must presume that the intent resides in the language the parties chose to employ in the agreement. *Foster Wheeler Enviresponse, Inc. v. Franklin*

*Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361(1997). A contract that is clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract. *O'Bannon Meadows Homeowners Assn.*, 2013-Ohio-2395. A contract is not ambiguous unless its provisions are susceptible to two or more reasonable interpretations. *Id.*

{¶ 36} Declaratory judgment actions may be filed for the purposes of deciding an actual controversy. *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶ 9. A declaratory judgment action allows a court to declare the rights, status, and other legal relationships of the parties. *Kirby v. Pioneer Ins. Co.*, 12th Dist. Warren No. CA98-09-120, 1999 WL 160965 (Mar. 22, 1999).

{¶ 37} CMH argued to the trial court that Treillage breached the terms of the Declaration by not maintaining its two back lots, and asked the court to rule that Treillage has the ongoing obligation to maintain the lots properly. We agree with the trial court that no such obligation exists.

{¶ 38} According to the Declaration, a "Lot" is defined as the "physical portion of the property defined on the Survey Plat, the boundaries of which are described pursuant to Article II, Section 2.1." Once a house is built upon a lot, the land underneath the house/structure belongs to the homeowner while the remaining land on the lot becomes a "Common Element." According to the Declaration, a Common Element is "any real estate owned or leased by the Association, including easements in favor of the Association." According to Article II, Section 2.4 of the Declaration, once a home is built upon a lot, the land not sitting directly underneath the house is surrendered to Treillage as a Common Element.

{¶ 39} Once land is surrendered to Treillage and becomes a Common Element, Section 2.4 of the Declaration provides that "that portion of the Lot shall become under the

exclusive care, custody and control of the Association." Until the lot becomes a Common Element, however, the Declaration does not provide for the maintenance of the lot. It is undisputed from the record that CMH owned lots, not Common Elements. All testimony presented at trial indicated that no homes were built upon CMH's lots so that there was no Common Element that Treillage was responsible for maintaining.[6]

{¶ 40} CMH argues that Treillage is responsible for maintaining its two lots in the same manner that it maintains the third lot located within eyesight of the entrance/exit of Treillage. However, the Declaration expressly provides that Treillage has the ability to maintain lots in a "reasonable manner in accordance with the standard generally prevailing throughout the Properties." For this reason, and based on the testimony presented at the bench trial, Treillage cuts the grass on CMH's lot near the road so as to maintain a high standard of care and maintenance on an oft-viewed lot. Unlike the lot near the entrance, CMH's other two lots are in the back of the development, not within eyesight of those driving on the road past Treillage. The fact that Treillage maintains the lot near the road so as to preserve a high standard of appearance, however, does not obligate Treillage to manicure all other lots on the property, especially where such lots are not viewable from the road and do not have a prominent location in the development.

{¶ 41} Our analysis is similar to that offered by the magistrate in its findings of fact and conclusions of law. CMH filed objections to the magistrate's findings and conclusions, and expressed its intent to the trial court to file a transcript of the bench trial to support its

---

6. CMH argues throughout its brief, and presented several arguments to the trial court, that it should not have to pay assessments because some of its lots are deemed "unbuildable" and will never convert to Common Elements because they will never have a home on them. However, and as correctly found by the trial court, the record does not indicate that the "unbuildable" designation has officially been placed upon CMH's lots, or that no homes will ever be built upon the lots. Whether the lots are buildable or not was not the point of the trial, and was not an issue that was tried and decided by the trial court. While there was some testimony at trial and during the relevant depositions that the current developer has indicated that the lots may be unbuildable, there was also some indication that a buildable/unbuildable designation can change and that it is possible to pursue other options in order to make the lots more "buildable." Regardless, the Declaration does not set forth the proposition that only buildable lots are subject to assessments, while unbuildable lots are not.

objections. However it did not. The trial court specifically noted that no such transcript was filed, and after a review of the record, determined that the magistrate's decision did not contain any plain error. CMH asserts on appeal that the trial court erred in making such a finding and in overruling its objections. We disagree.

{¶ 42} According to Civ.R 53(D)(3)(b)(iii), any "objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." While it may have been possible to review issues of law, rather than fact, absent the transcript, we find that the facts were integral to the legal conclusions CMH asked the trial court to reach in relation to its objections. For example, several objections raised by CMH asserted that the magistrate's findings were not supported by the evidence presented at trial, or that evidence presented at the trial was ignored by the magistrate. As such, the transcript of the proceedings was necessary for a full review before the trial court could rightly rule on the objections. In the absence of the transcript, the record indicates that the trial court reviewed the record for plain error, and finding none, adopted the magistrate's opinion. We find no error in this conclusion.

{¶ 43} After reviewing the entire record and considering each of CMH's arguments as raised to the trial court and on appeal, we find that the trial court properly ruled that Treillage had not committed a breach of contract and is not obligated to maintain CMH's lots. As such, CMH's third and fourth assignments of error are overruled.

{¶ 44} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.