[Cite as *Settlers Walk Home Owners Assn. v. Phoenix Settlers Walk, Inc.*, 2015-Ohio-4821.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| SETTLERS WALK HOME OWNERS ASSOCIATION, | : | CASE NOS. CA2014-09-116 |
|  | : | CA2014-09-117 |
| Plaintiff-Appellee/ Cross-Appellant, | : | CA2014-09-118 |
|  | : | O P I N I O N |
|  | : | 11/23/2015 |
| - vs - | : |  |
|  | : |  |
| PHOENIX SETTLERS WALK, INC., et al., | : |  |
| Defendants-Appellants/ Cross-Appellees. | : |  |
|  | : |  |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 09CV76003

Scott G. Oxley, 325 North Main Street, Suite 204, Springboro, Ohio 45066, for plaintiff-appellee/cross-appellant, Settlers Walk Home Owners Association

Dinsmore & Shohl, LLP, Susan D. Solle, 1100 courthouse Plaza, SW, 10 North Ludlow Street, Dayton, Ohio 45402, for defendant-appellant/cross-appellee, Phoenix Settlers Walk, Inc., et al.

William G. Deas and Tami Hart Kirby, One South Main Street, Suite 1600, Dayton, Ohio 45402, for defendant-appellant/cross-appellee, First Financial Bank, N.A.

Patricia J. Friesinger, 33 West First Street, Suite 600, Dayton, Ohio 45402, defendant-appellant/cross-appellee, Phoenix Harbor Cove, Inc.

**S. POWELL, J.**

{¶ 1} Defendants-appellants/cross-appellees, First Financial Bank, National

Association (First Financial Bank), its successor in interest, Phoenix Harbor Cove, Inc. (Harbor Cove), Phoenix Settlers Walk, Inc. (Phoenix), and plaintiff-appellee/cross-appellant, Settlers Walk Home Owners Association (Settlers Walk HOA), appeal from various decisions issued by the Warren County Court of Common Pleas on matters regarding assessments levied against real property located within the Settlers Walk residential community. For the reason outlined below, we affirm in part and reverse in part.

{¶ 2} is a large residential community located in Springboro, Warren County, Ohio that is divided into multiple smaller neighborhoods, such as the Cove and Stonebridge, which are subject to a declaration of covenants, conditions and restrictions, and reservation of easements (Declaration). It is undisputed that the Declaration was recorded with the Warren County Recorder's Office on February 5, 1996. As relevant here, the Declaration contains the following provisions that allow assessments to be levied against property owners for common and neighborhood expenses.

> 9.5 <u>Lien for Assessments.</u> The Association shall have a lien for any Assessment levied against a Unit, for fines imposed against an Owner or Occupant, and for interest, costs and reasonable attorney fees.
>
> 9.5.1 <u>Creation.</u> The lien for Assessments is created by this Declaration and shall be a charge and a continuing lien on each Unit which shall run with the land. All persons or entities acquiring an interest in a Unit after the filing of this Declaration take such interest subject to the lien.
>
> 9.5.2 <u>Effective Dates.</u> The lien for the Common Expenses and Neighborhood Expenses for each Unit shall be effective on the first day of the fiscal year of the Association. The lien for other Assessments shall be effective on the first day of the month following the notice of it [sic] levy on the Owners affected.
>
> 9.5.3 <u>Perfection.</u> Recording of this Declaration constitutes notice and perfection of the lien.
>
> 9.5.4 <u>Notice of Lien.</u> The Association may file a notice of lien

with the Recorders of Warren County and/or Montgomery County. Such notice shall not be required for the Association to enforce its lien.

9.5.5 <u>Priority of the Lien.</u> The lien created by this Section shall be prior to all liens and encumbrances recorded subsequent to this Declaration except the lien for real estate taxes and assessments and the lien of any bona fide first Mortgage filed of record.

9.5.6 <u>Subordination and Mortgagee Protection.</u> The lien of any Assessment levied pursuant to this Declaration (and charges, interest, costs and attorney fees) shall be subordinate to, and shall in no way effect the rights of the holder of a first mortgage made in good faith for value received; provided, however, that such subordination shall apply only to Assessments, or installations therefor, which have become due and payable prior to the date of Sheriff's sale of such Unit pursuant to a foreclosure or the date of a deed in lieu of foreclosure. Such sale or transfer shall not relieve the mortgagee or the purchaser of a Unit at such sale from liability for any Assessments becoming due, nor from the lien of any such subsequent Assessment.

9.5.7 <u>Extinguishment of the Lien.</u> A lien for unpaid Assessments is extinguished unless proceedings to enforce it are instituted within five (5) years after the full amount of the Assessment becomes due. If an Owner of a Unit subject to a lien files a petition for relief under the United States Bankruptcy Code, then the period of time to enforce the Association's lien shall be tolled until thirty (30) days after the automatic stay under Section 362 of the Bankruptcy Code is lifted.

9.5.8 <u>Estoppel Certificate.</u> Upon request of any mortgagee or Owner and upon payment in full of all Assessments and other charges permitted by this Declaration that are due to the Association, the Association shall execute and deliver such mortgagee or Owner an Estoppel Certificate. Such certificate shall be in recordable form and shall note the payment of the outstanding Assessments and charges and that the Association is estopped from the enforcement of its lien with respect to Assessment and charges becoming due and payable prior to the date of the Certificate. The Association may charge a reasonable fee for the preparation of such certificate.

9.5.9 <u>Delinquency and Acceleration.</u> Any installment of an Assessment provided for by this Declaration shall become delinquent if not paid on the due date as established by this

- 3 -

Declaration or by the Board. With respect to each installment of an Assessment not paid within five (5) days of its due date, the Board may, at its election, require the Owner to pay a reasonable late charge, costs of collection, reasonable attorney fees and interest at the rate provided by Section 1343.03 of the Ohio Revised Code (and as amended from time to time). Interest shall be calculated from the date of the delinquency to the date full payment is received by the Association. If any installment of an Assessment is not paid within thirty (30) days of its due date, the Board may, at its election, declare all of the unpaid balance of the Assessment without further notice or demand to the Owner. The Association may enforce the collection of the full Assessment and all charges thereon in any manner authorized by law or this Declaration. The filing of any petition for relief pursuant to the United States Bankruptcy Code by an Owner whose Assessment has been accelerated shall operate as a restoration of the Assessment to its prior status as if it has been accelerated.

9.5.10 <u>Remedies Cumulative.</u> A suit to recover money judgment for unpaid Assessments and charges may be maintained without foreclosing or waiving the right to enforce the lien. A foreclosure may be maintained notwithstanding the pendency of any suit to recover a money judgment.

9.5.11 <u>Personal Obligation.</u> The Assessments, including fines, if any, payable by each Owner, together with any penalty, interest, costs and reasonable attorney fees shall be the personal obligation of the Owner of the Unit at the time incurred. The personal obligation shall not pass to any successors in title unless expressly assumed by them.

{¶ 3} In early 2008, Martin-Coffman Development Company, Inc. (Martin-Coffman) sold approximately 50 of its lots located within the Settlers Walk residential community to Phoenix. Thereafter, on March 7, 2008, Phoenix took deeds to these various properties in lieu of foreclosure. It is undisputed that Martin-Coffman had not paid any assessments on the subject properties for the years 2003 through 2007. It is also undisputed that Settlers Walk HOA did not record any lien notice with the Warren County Recorder's Office with respect to Martin-Coffman's unpaid assessments.

{¶ 4} On December 17, 2009, Settlers Walk HOA filed a complaint against Phoenix

seeking to collect on the unpaid assessments Martin-Coffman had not paid for the years 2005 through 2007, as well as those assessments Phoenix had not paid for the year 2009. Settlers Walk HOA subsequently amended its complaint on two separate occasions seeking to collect additional unpaid assessments for the years 2003 through 2007 and 2009 through 2013. Phoenix generally denied Settlers Walk HOA's claims made as part of its various complaints.

{¶ 5} On April 9, 2013, First Financial Bank, Settlers Walk HOA and Phoenix entered into an escrow agreement to facilitate the sale of a number of lots Phoenix owned within the Cove and Stonebridge neighborhoods. The escrow agreement states, in pertinent part:

> A. A dispute among the parties exists as to certain Homeowner Association assessments for various properties, said dispute resulting in litigation captioned *Settlers Walk Home Owner's Association v. Phoenix Settlers Walk, Inc. et al.*, Case No. 09CV76003 (the "Lawsuit") in the Common Pleas Court of Warren County, Ohio (the "Court").
>
> B. In order to facilitate the sale of lots 21, 22, 36, 39, 38, 37 (collectively, "Stonebridge Lots") and lots 36, 76, 84, 86, 87, 88 ("Cove Lots") the parties to the Agreement have agreed to escrow $30,789.00 with Escrow Agent as hereinafter provided.
>
> NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:
>
> 1. Escrow. At the closing of the sale of the Stonebridge Lots and Cove Lots, the proceeds derived from the purchase price shall be escrowed as follows:
>
> a) All pre-2009 [Settlers Walk HOA] fees and late charges in the total amount of $30,789.00 (the "Escrow Funds") shall be withheld in escrow by Escrow Agent and disbursed in accordance with the terms and conditions of this Agreement.
>
> b) All 2009 and post-2009 [Settlers Walk HOA] fees, late charges, and attorney fees in the total amount of $64,003.00 shall be paid to [Settlers Walk HOA]. Phoenix's payment made pursuant to this Section does not constitute a resolution and/or

waiver of a disputed claim. Phoenix expressly reserves the right to dispute the amount, validity, and/reasonableness of the [Settlers Walk HOA] late charges and attorney fees paid pursuant to this Section in the course of the Lawsuit.

2. Disbursement of Escrow Funds. Escrow Agent shall hold and disburse the Escrow Funds upon the earlier of, and in accordance with, (i) Phoenix, [First Financial Bank], and [Settlers Walk HOA's] mutual resolution of the Lawsuit, or (ii) any final judgment and/or any other applicable order of the Court.

After the sale of these lots was completed, an additional sum slightly in excess of $11,000.00 was then placed in escrow in order to facilitate the sale of two more lots, thereby raising the total amount held in escrow to $41,956.66.

**{¶ 6}** On September 18, 2013, a one-day bench trial was held before a magistrate. It is undisputed that First Financial Bank did not appear at the trial. Following trial, on January 13, 2014, the magistrate issued a decision granting judgment to Settlers Walk HOA. In so holding, the magistrate stated, in pertinent part, the following:

Section 9.5 of the declaration of covenants creates a lien for unpaid assessments, enforceable *in rem* against each lot Phoenix owns, and enforceable *in personam* against Phoenix for assessments due since Phoenix took title. *In rem* enforcement is limited, however, to the amount owed for each separate lot. By stipulation, the lien held by [Settlers Walk HOA] is inferior in priority to First Financial Bank's mortgage interest.

[Settlers Walk HOA's] lien for assessment for years 2003 and 2004 have been extinguished pursuant to Section 9.5.7 of the covenants.

[Settlers Walk HOA] is entitled to prejudgment interest at the statutory rate upon each unpaid assessment, and reasonable attorney's fees.

[Settlers Walk HOA] may not assess monthly late fees for unpaid assessments, and is limited to a single late fee of $25.00 per lot for each unpaid yearly assessment.

**{¶ 7}** On March 18, 2014, the magistrate issued a supplemental decision, wherein it

found "[t]he $41,956.66 currently held in escrow is ordered released to [Settlers Walk HOA] in partial satisfaction of Phoenix's * * * personal liability." Phoenix and First Financial Bank then filed objections to the magistrate's decision. Settlers Walk HOA, however, did not file any objections.

{¶ 8} On March 28, 2014 and June 3, 2014, the trial court issued separate decisions overruling both Phoenix and First Financial Bank's objections to the magistrate's decision. In so holding, the trial court affirmed and adopted the magistrate's decision by also concluding "Section 9.5 of the covenants creates a lien for unpaid assessments, enforceable *in rem* against each lot owned by Phoenix, and enforceable *in personam* against Phoenix for assessments due since Phoenix took title." The trial court further found that First Financial Bank was not entitled to any of the $41,956.66 held in escrow. Specifically, the trial court stated:

> The Court previously found, based upon the stipulation of the parties, that First Financial has first and best lien priority over the lots at issue in this case. However, that determination does not entitle First Financial to any funds held in escrow. The escrow agreement provides that the funds are to be disbursed upon either (1) the parties' mutual resolution of the lawsuit; or (2) any final judgment and/or any other applicable order of the Court. The escrow agreement does not provide for the disbursement of the funds to any specific party. Because Phoenix has a personal liability toward [Settlers Walk HOA], the Magistrate found, and this Court agrees, that the escrowed sum should be released to [Settlers Walk HOA]. Without any other evidence demonstrating First Financial's entitlement to the escrowed funds, this Court overrules First Financial's objection.

{¶ 9} On June 6, 2014, the trial court issued a decision to correct an oversight in its original decisions affirming and adopting the magistrate's decision. As part of this amended decision, the trial court reiterated that upon the sale of any of the subject property owned by Phoenix, "First Financial Bank is entitled to have its lien paid first as it holds first lien priority."

{¶ 10} On August 6, 2014, the trial court entered a final judgment entry, wherein it incorporated its earlier decisions and found in favor of Settlers Walk HOA. Specifically, the trial court granted judgment to Settlers Walk HOA "as against Phoenix '*in rem*' only of a total amount of $46,608.64" representing the unpaid assessments and late fees for the years 2005 through 2007 and "as against Phoenix '*in rem and in personam'* for a total amount of $74,204.38" representing the unpaid assessments and late fees for the years 2009 through 2013. The trial court then ordered the $41,956.66 held in escrow be released to Settlers Walk HOA.

{¶ 11} The parties now appeal from the trial court's various decisions, raising a total of five assignments of error for review.

{¶ 12} Phoenix's Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED IN FINDING THAT [SETTLERS WALK HOA] PERFECTED AN ENFORCEABLE LIEN UNDER OHIO LAW BY RECORDING THE [DECLARATION] WHEN THE SUBDIVISION WAS INITIALLY DEVELOPED.

{¶ 14} In what appears to be an issue of first impression, Phoenix argues in its single assignment of error that the trial court erred by finding Settlers Walk HOA perfected an enforceable lien against the property that ran with the land by simply recording the Declaration itself without ever recording a separate instrument notifying any potential bona fide purchaser that Settlers Walk HOA had a lien on the property resulting from the unpaid assessments. We agree.

{¶ 15} We begin our analysis by discussing the applicable standard of review. Here, the facts are generally not in dispute. Instead, the issue is whether Settlers Walk HOA perfected an enforceable lien against the subject property by simply recording the Declaration itself without ever recording a separate instrument notifying any potential bona

fide purchaser that it had a lien on the property resulting from the unpaid assessments. As this is a question of law, we review Phoenix's contention under a de novo standard of review. *Wilson v. AC & S, Inc.*, 169 Ohio App.3d 720, 2006-Ohio-6704, ¶ 61 (12th Dist.). In conducting a de novo review, "this court independently reviews the record without giving deference to the trial court's decision." *Roberts v. Mike's Trucking, Ltd.*, 12th Dist. Madison Nos. CA2013-04-011 and CA2013-04-014, 2014-Ohio-766, ¶ 24.

{¶ 16} Ohio is what is known as a "race/notice" state. To that end, R.C. 5301.25(A) provides, in pertinent part:

> All deeds * * * and instruments of writing properly executed for the conveyance or encumbrance of lands * * * shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed * * * or instrument.

{¶ 17} "Under this statute, a bona fide purchaser for value is bound by an encumbrance upon the property only if he has constructive or actual knowledge of the encumbrance." *Cox v. Estate of Wallace*, 12th Dist. Butler No. CA97-06-078, 1987 WL 32746, *2 (Dec. 31, 1987), citing *Tiller v. Hinton*, 19 Ohio St. 3d 66 (1985). Recordation gives constructive notice to all persons dealing with the land of properly recorded instruments in the chain of title. *Deutsche Bank Natl. Trust Co. v. Hill*, 5th Dist. Perry No. 14CA00021, 2015-Ohio-1575, ¶ 29. Therefore, "if a lienholder fails to record an encumbrance on real property, the lienholder will not have the benefit of being able to claim constructive notice of the lien against a subsequent purchaser." *Daniely v. Accredited Home Lenders*, 8th Dist. Cuyahoga No. 99208, 2013-Ohio-4373, ¶ 12.

{¶ 18} A lien on real property for payment of a debt is a right to have the debt satisfied out of the land, if not otherwise paid. However, as the Ohio Supreme Court has stated,

"there can be no lien unless there is a debt[.]" *Choteau, Merle & Sandford v. Thompson & Campbell*, 2 Ohio St. 114, 124 (1853). "Thus, a lien cannot exist in the absence of the debt, the payment of which it secures." *Westin Hills West Three Townhome Owners Ass'n v. Federal Nat. Mortg. Ass'n*, 283 Neb. 960, 966 (2012), citing *Dean Realty Co. v. City of Kansas City*, 85 S.W.3d 83 (Mo.App.2002). In other words, although there are many types and classes of liens, "all have this characteristic of being secondary to an existing obligation, usually a debt. If there is no debt the lien ceases to have life or existence for its function has vanished[.]" *Hughes Plumbing and Heating, Inc. v. Rhoad*, 3d Dist. Hancock Nos. 5-79-4 and 5-79-5, 1979 WL 207953, *2 (May 22, 1979).

{¶ 19} In the present case, the undisputed facts show that at the time the Declaration was recorded on February 5, 1996, there existed no actual lien upon the subject property as no assessment had been charged, much less stood unpaid or delinquent. In turn, although advocating for this court to affirm the trial court's decision, we find Settlers Walk HOA did not have a perfected and enforceable lien on the subject property that ran with the land merely by saying so as part of the recorded Declaration. Again, as the Ohio Supreme Court has stated, "there can be no lien unless there is a debt[.]" *Choteau*, 2 Ohio St. at 124. Therefore, in accordance with the provisions found in R.C. 5301.25(A), once the assessments went unpaid and a debt was established, Settlers Walk HOA should have recorded a separate instrument with the county recorder to perfect its lien and provide notice to any subsequent bona fide purchaser that it had a lien on the subject property. Settlers Walk HOA simply did not do that here.

{¶ 20} In reaching this decision, we note that the trial court relied on the Second District Court of Appeals decision in *Premiere Mortg. Co., Inc. v. Fetter*, 2d Dist. Montgomery No. 12539, 1992 WL 24893 (Feb. 12, 1992), for the proposition that the Declaration "controls

where there is no statute on point regarding the creation of the type of lien [Settlers Walk HOA] seeks to enforce." The Second District's decision in *Fetter*, however, has not been cited by any court to support this position. Moreover, the Second District's decision in *Fetter* does not in any way address the Ohio Supreme Court's earlier pronouncement that "there can be no lien unless there is a debt[.]" *Choteau*, 2 Ohio St. at 124. Therefore, while we agree that the Declaration may allow for the creation of a lien once a debt was established after an assessment had gone unpaid, pursuant to R.C. 5301.25(A), the mere creation of a lien is insufficient to bind any subsequent bona fide purchaser. This is because until an instrument evidencing the lien is "so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed * * * or instrument." R.C. 5301.25(A). Settlers Walk HOA cannot employ language in the Declaration in order to supersede this well-established Ohio law.

{¶ 21} The trial court also relied upon the Ohio Supreme Court's decision in *Wayne Building & Loan Co. of Wooster v. Yarborough*, 11 Ohio St.2d 195 (1967), for the proposition that "Ohio's common law provides that one may encumber real property in exchange for future advances without the necessity of filing additional instruments when such advances are made." In support of this claim, the trial court cited to the following passage:

> Therefore, it is held that where nonobligatory advances are made after the commencement of construction and not in accordance with Section 1311.14, Revised Code (or are not shown to have been actually used in the construction for which liens are claimed), under a mortgage contemplating future advances which was recorded prior to such commencement of construction, the lien of such advances is held subsequent in priority to the mechanics' liens arising from such construction.

*Id.* at 219.

- 11 -

{¶ 22} The case at bar, however, is not about nonobligatory advances after the commencement of any construction on the subject property, nor does this case relate in any way to any mechanic's liens that should arise out of such construction. In turn, contrary to the trial court's findings, this is not a case about future advances from a mortgagee, but rather, yearly assessments against the subject property levied by a home owners association for common and neighborhood expenses. Therefore, we fail to see how the Ohio Supreme Court's decision in *Yarborough*, nor any of the other cases cited by the magistrate to support this position, applies to the case at bar.

{¶ 23} We further note that this case should not be confused with our recent decision in *Christopher Michael Homes, L.L.C. v. Treillage Residence Owners' Assn., Inc.*, 12th Dist. Butler No. CA2013-12-238, 2014-Ohio-4754. As part of that decision, this court stated, without any further comment, that "[a]ccording to the Declaration, the recording of the Declaration constituted notice and perfection of any lien, and Treillage was permitted to enforce liens absent a filing of notice with the Butler County Recorder." *Id.* at ¶ 22. Whether that was in fact true, however, was not at issue in that case for it is undisputed that Treillage Residence subsequently filed an instrument evidencing its liens on the subject property once the assessments went unpaid in accordance with R.C. 5301.25(A). Therefore, both Settlers Walk HOA and Phoenix's reliance on our decision in *Treillage Residence* is misplaced.

{¶ 24} Finally, we acknowledge that these types of issues that arise today have generally been resolved through the enactment of Ohio's Planned Community Law as found in R.C. Chapter 5312. For instance, as provided by R.C. 5312.12:

> (A) The owners association has a lien upon the estate or interest in any lot for the payment of any assessment or charge levied in accordance with section 5312.11 of the Revised Code, as well as any related interest, administrative late fees, enforcement assessments, collection costs, attorney's fees, and

paralegal fees, that are chargeable against the lot and that remain unpaid ten days after any portion has become due and payable.

(B)   All of the following apply to a lien charged against a property pursuant to this section:

(1)   The lien is effective on the date that a certificate of lien is filed for record in the office of the recorder of the county or counties in which the lot is situated, pursuant to authorization by the board of directors of the owners association. The certificate shall contain a description of the lot, the name of the record owner of the lot, and the amount of the unpaid assessment or charge. It shall be subscribed to by the president of the board or other designated representative of the owners association.

(2)   The lien is a continuing lien upon the lot against which each assessment or charge is made, subject to automatic subsequent adjustments reflecting any additional unpaid interest, administrative late fees, enforcement assessments, collection costs, attorney's fees, paralegal fees, and court costs.

(3)   The lien is valid for a period of five years from the date of filing, unless it is sooner released or satisfied in the same manner provided by law for the release and satisfaction of mortgages on real property or unless it is discharged by the final judgment or order of a court in an action brought to discharge the lien as provided in this section.

(4)   The lien is prior to any lien or encumbrance subsequently arising or created, except liens for real estate taxes and assessments of political subdivisions and liens of first mortgages that have been filed for record prior to the recording of the lien, and may be foreclosed in the same manner as a mortgage on real property in an action brought by the owners association.

{¶ 25} However, pursuant to R.C. 5312.02(C), "[n]othing in this chapter invalidates any provision of a document that governs a planned community if that provision was in the document at the time the document was recorded and the document was recorded prior to the original effective date of this chapter," in this case, September 10, 2010. Therefore, because the Declaration at issue in this case was recorded on February 5, 1996, nearly 15 years before the effective date of R.C. Chapter 5312 on September 10, 2010, Ohio's Planned

Community Law does not apply here.

{¶ 26} In light of the foregoing, we find the trial court erred by finding Settlers Walk HOA perfected an enforceable lien against the subject property by simply recording the Declaration itself without ever recording a separate instrument notifying any potential bona fide purchaser that it had a lien on the property resulting from the unpaid assessments. The trial court, therefore, erred by requiring Phoenix to pay any unpaid assessments and late fees imposed for the years 2005 through 2007 prior to Phoenix purchasing the subject property in 2008. Accordingly, Phoenix's single assignment of error is sustained and the trial court's decision holding otherwise is reversed.

{¶ 27} Settlers Walk HOA's Assignment of Error No. 1:

{¶ 28} THE TRIAL COURT ERRED [AS] A MATTER OF LAW BY FINDING THAT [SETTLER'S WALK HOA] MAY ONLY CHARGE ONE LATE FEE PER ASSESSMENT OF $25.00.

{¶ 29} In its first assignment of error, Settlers Walk HOA argues the trial court erred by affirming and adopting the magistrate's decision finding it could only charge Phoenix one late fee for each unpaid yearly assessment levied against it for each separate lot that Phoenix owned. However, as the record reveals, Settlers Walk HOA never filed any objections to the magistrate's decision, let alone an objection to the magistrate's decision finding "that the HOA may charge only one late fee per assessment." In fact, as part of its memorandum in opposition to Phoenix's objections to the magistrate's decision, Settlers Walk HOA actually requested the trial court to adopt the magistrate's decision and enter judgment consistent with the magistrate's decision in its favor.

{¶ 30} By failing to file any objections to the magistrate's decision, we find Settlers Walk HOA waived the right to assign as error on appeal any issue regarding the magistrate's

decision finding it could only charge Phoenix one late fee for each unpaid yearly assessment levied against it for each separate lot that Phoenix owned. Civ.R. 53(D)(3)(b)(iv) (entitled "waiver of right to assign adoption by court as error on appeal"); *Vilardo v. Sheets*, 12th Dist. Clermont No. CA2005-09-091, 2006-Ohio-3473, ¶ 14 (appellant "waived the right to assign as error on appeal the trial court's adoption of any finding of fact or conclusion of law" where he failed to enter objections to the magistrate's decision).[1] Therefore, Settlers Walk HOA's first assignment of error is overruled.

{¶ 31} Settlers Walk HOA's Assignment of Error No. 2:

{¶ 32} THE TRIAL COURT ERRED BY FINDING [FIRST FINANCIAL BANK] HAD A FIRST PRIORITY LIEN OVER [SETTLERS WALK HOA].

{¶ 33} In its second assignment of error, Settlers Walk HOA argues the trial court erred by affirming and adopting the magistrate's decision finding it held an inferior lien priority position to First Financial Bank's mortgage interest. The magistrate, however, found the parties had entered into a pretrial stipulation that First Financial Bank held a mortgage interest that had priority over that of Settlers Walk HOA. Again, Settlers Walk never filed any objections to the magistrate's decision, let alone an objection to the magistrate's decision finding the parties had entered into such a pretrial stipulation. Therefore, although Settlers Walk HOA now claims the magistrate "wrongly stated that a stipulation existed," we find Settlers Walk HOA also waived the right to assign this as error on appeal. Accordingly, Settlers Walk HOA's second assignment of error is likewise overruled.

{¶ 34} First Financial Bank's Assignment of Error No. 1:

---

1. The Ohio Supreme Court recently addressed the distinction between the concepts of "waiver" and "forfeiture" in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459. However, because Civ.R. 53(D)(3)(b)(iv) still refers to a "waiver" as opposed to a "forfeiture" of the right to assign an issue as error on appeal when a party failed to object to a magistrate's decision on that issue, we will continue to apply the language in the rule as it is currently written.

{¶ 35} THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO PROVIDE FIRST FINANCIAL BANK, NATIONAL ASSOCIATION WITH THE OPPORTUNITY TO PRESENT EVIDENCE AT THE TRIAL REGARDING THE ESCROWED FUNDS.

{¶ 36} In its first assignment of error, First Financial Bank argues the trial court erred by not allowing it to present evidence at trial. However, as the record makes clear, First Financial Bank did not attend the trial despite having notice of the September 18, 2013 trial date. First Financial Bank, therefore, clearly had the opportunity to present evidence at the trial but forwent that opportunity by choosing not to attend the trial. Nothing about this indicates the trial court somehow erred as First Financial Bank now suggests. Accordingly, First Financial Bank's first assignment of error lacks merit and is overruled.

{¶ 37} First Financial Bank's Assignment of Error No. 2:

{¶ 38} THE TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT FIRST FINANCIAL BANK, NATIONAL ASSOCIATION, DESPITE ENTERING INTO AN ESCROW AGREEMENT AND HAVING A FIRST PRIORITY MORTGAGE LIEN, WAS NOT ENTITLED TO CERTAIN ESCROW PROCEEDS FROM A THIRD-PARTY SALE OF PROPERTY THAT WAS THE SUBJECT OF THE UNDERLYING FORECLOSURE ACTION.

{¶ 39} In its second assignment of error, First Financial Bank argues the trial court erred by finding it was not entitled to any of the funds held in escrow pursuant to the escrow agreement entered into between itself, Settlers Walk HOA and Phoenix. Yet, just as the trial court found, the escrow agreement does not provide for the disbursement of the escrowed funds to any specific party. Rather, the escrow agreement merely states that the "Escrow Agent shall hold and disburse the Escrow Funds upon the earlier of, and in accordance with, (i) Phoenix, [First Financial Bank], and [Settlers Walk HOA's] mutual resolution of the

Lawsuit, or (ii) any final judgment and/or any other applicable order of the Court."

{¶ 40} Because Phoenix still owes Settlers Walk HOA for the unpaid assessments levied on the property for the years 2009 through 2013 in the amount of $74,204.38, we find no error in the trial court's decision finding the escrowed sum should be released to Settlers Walk HOA. As the magistrate found, First Financial Bank has "presumably been paid everything it was owed[.]" After a thorough review of the record, we find nothing to indicate the trial court's decision was improper. Therefore, because we find no error in the trial court's decision, First Financial Bank's second assignment of error is also without merit and overruled.

{¶ 41} Judgment affirmed in part and reversed in part.

PIPER, P.J., concurs

M. POWELL, J., concurs in part and dissents in part.

**M. POWELL, J., concurring in part and dissenting in part.**

{¶ 42} I concur with the majority in its resolution of the assignments of error of Settlers Walk HOA and First Financial Bank. However, I dissent from the majority's resolution of Phoenix's assignment of error that the filing of the Declaration, without the filing of a separate affidavit of lien, failed to perfect an enforceable lien for the assessments.

{¶ 43} R.C. 5301.25(A) provides in pertinent part that:

> All * * * instruments of writing properly executed for the * * * encumbrance of lands * * * shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

- 17 -

**{¶ 44}** R.C. 5301.25(A) says nothing as to what is required to create an encumbrance upon real property. Rather, the statute sets forth the formalities necessary to transform an encumbrance into a lien by providing notice of the encumbrance to subsequent bona fide purchasers. R.C. 5301.25(A) requires only that the instrument creating the encumbrance be in writing, properly executed, and recorded. The Declaration satisfies these three requirements and Phoenix does not argue to the contrary. Implicitly, Phoenix admits, and the majority acknowledges, that the Declaration creates an encumbrance when they conclude that the filing of a separate instrument would perfect the lien for the assessments, because there can be no lien without a precedent encumbrance.

**{¶ 45}** The essence of the majority opinion is that there is no lien because at the time the Declaration was recorded, "no assessment had been charged, much less stood unpaid or delinquent." Therefore, the majority posits, any lien sought to be perfected by the recording of the Declaration is fraudulent as provided by R.C. 5301.25(A).

**{¶ 46}** The majority cites the holdings of *Choteau, Merle & Sandford v. Thompson & Campbell*, 2 Ohio St. 114 (1853), and *Hughes Plumbing and Heating, Inc. v. Rhoad*, 3d Dist. Hancock Nos. 5-79-4 and 5-79-5, 1979 WL 207953 (May 22, 1979), for the proposition that "there can be no lien unless there is a debt[.]" *Choteau* at 124. This is not surprising. By definition, a lien is a security for the payment of a debt or performance of some other obligation. *See Clapp v. Huron Cty. Banking Co.*, 50 Ohio St. 528, 535 (1893), describing a "lien" as a charge upon any "real or personal property [for] the payment of any debt or duty." However, neither *Choteau* nor *Hughes Plumbing* addresses in any respect the issue here as to whether it is necessary that the debt exist at the time of the recording of notice of the encumbrance for the lien to be perfected.

**{¶ 47}** Liens may be created in various ways. "A lien can be created by a contract with

- 18 -

the owner of the property or someone authorized to act on his or her behalf, or by a statute, or by operation of common law." 66 Ohio Jurisprudence 3d, Liens, Section 5 (2015). *See also Great Am. Ins. Co. v. Thompson Trust*, 1st Dist. Hamilton No. C-040127, 2006-Ohio-304, ¶ 13, fn. 5 (liens may only be created by agreement or by a fixed rule of law).

{¶ 48} Article IX, Section 9.1, of the Declaration creates the various assessments and provides, in pertinent part, that "Each Owner, by acceptance of a deed or recorded contract of sale for any portion of the Properties, is deemed to covenant and agree to pay these assessments."

{¶ 49} Article IX, Section 9.5, of the Declaration, quoted in the majority opinion, creates the lien for the assessments. Therefore, the lien for the assessments is created by agreement.

{¶ 50} In *One Bratenahl Place Condominium Assn., Inc. v. Sliwinski*, 8th Dist. Cuyahoga No. 102493, 2015-Ohio-3353, the Eighth District Court of Appeals contrasted the provisions of Ohio's condominium and planned community statutes regarding the adjustment of liens for after-acquired debts:

> Thus, the planned community lien statute expressly indicates that liens on a planned community lot are subject to *automatic* subsequent adjustments, and clearly describes the lien as a "continuing lien." By contrast, the condominium lien statute at issue here, R.C. 5311.18(A), is completely devoid of these phrases. Because the General Assembly expressly provided for automatic perfection of after-acquired debts in one statute and not in another, we are unconvinced that the current version of R.C. 5311.18(A) abrogates *Zanders.* Instead, in our view, the phrase "subject to subsequent adjustments," without more, refers to recorded liens that may be adjusted and modified accordingly with a later-filed lien. The language of R.C. 5311.18(A) neither references nor contemplates the automatic inclusion of new charges without the filing of an updated lien.

(Emphasis sic.) *Id.* at ¶ 16.

- 19 -

{¶ 51} The *One Bratenahl* court recognized that whether a statutory lien may include a debt arising after the recording of an instrument evidencing a lien depends upon the terms of the statute. There is no reason why this same logic ought not to apply to liens created by agreement, as the lien here. That is, whether antecedent debt may be included in the lien is subject to the terms of the agreement creating the lien.

{¶ 52} In modern practice and forms of encumbrance, liens created by agreement are commonly adjusted to include antecedent debts (i.e., the lien created by open-ended mortgages is adjusted to include advances made after the recording of the mortgage; the lien of home-equity line of credit mortgages comes and goes as advances are made and re-paid and, frequently, there is no debt at the time of the recording of the home-equity line of credit mortgage). The Second District Court of Appeals recognized this facet of liens created by agreement and observed,

> Since this lien is not created by statute, appellant had no greater lien rights than those established in the Declaration. There is no dispute that the Declaration is controlling.

*Premiere Mortg. Co. v. Fetter*, 2d Dist. Montgomery No. 12539, 1992 WL 24893, *2 (Feb. 12, 1992).[2]

{¶ 53} Additionally, there is no statutory proscription that liens created by agreement may not apply to an antecedent debt.[3]

{¶ 54} Article IX, Section 9.5.2, of the Declaration provides that the lien for assessments is effective "on the first day of the fiscal year of the Association" as to the lien

---

2. The majority insinuates that *Fetter* is not good law because it "has not been cited by any court to support this position." However, *Fetter* has neither been overruled nor criticized since its 1992 release. It is more likely that the lack of citation is due to the novelty of the issue involved, as the majority acknowledges at the outset of its analysis ("In what appears to be an issue of first impression * * *").

3. As discussed below, for declarations executed and recorded on or after September 10, 2010, R.C. 5312.12 now requires the filing of a certificate a lien in order for the lien to be effective.

for Common and Neighborhood expenses, and "on the first day of the month following notice" of the levy for other assessments. Therefore, the Declaration specifically provides for a lien for assessments levied antecedent to the recording of the Declaration. Once the assessment is levied, the debt and the recording coincide and the *Choteau* debt requirement is satisfied.

{¶ 55} A lien may also secure performance of some obligation other than a debt. *Clapp*, 50 Ohio St. at 535. *See also Ross v. Franko*, 139 Ohio St. 395, 397 (1942) (generally, a lien is a charge upon property to secure the performance of an obligation such as the payment of a debt). As stated, Article IX, Section 9.1, of the Declaration provides that an owner agrees to pay the assessments by accepting a deed to a property subject to the Declaration. Upon the recording of that deed, there is compliance with R.C. 5301.25(A) and a lien is perfected securing performance of the obligation to pay the assessments, whenever the assessments may be levied. In this regard, the Declaration is much like a home equity line of credit mortgage, which, until an advancement of credit is made, secures the obligation to repay subsequent advancements.

{¶ 56} The majority and I differ only as to when the recording of the instrument proving notice of the encumbrance and the debt or other obligation to be secured by the lien must coincide. The majority is of the opinion that the debt must precede or be contemporaneous with the recording of the lien instrument. It is my opinion that a lien arises whenever there is a concurrence of the debt/obligation and the recording. In either case, the debt and its extent may not be a matter of public record, thus requiring further inquiry by subsequent purchasers, and the notice of the existence of the lien is of the same quality.

{¶ 57} The Declaration complies with the formalities required by R.C. 5301.25(A). The lien for assessments is created by agreement, provides for the inclusion of antecedent debt,

- 21 -

and separately secures the performance of the obligation of an owner to pay the assessments. Statutes do not prohibit liens created by agreement from securing the payment of antecedent debt. Once the assessments are levied, a debt and the instrument creating the lien coincide, consistent with the *Choteau* debt requirement.

{¶ 58} Although I concur with the resolution of the assignments of error of Settlers Walk HOA and First Financial Bank, with regard and respect for my colleagues in the majority, I dissent from this resolution of Phoenix's assignment of error.