[Cite as *Word of God Church v. Stanley*, 2011-Ohio-2073.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| THE WORD OF GOD CHURCH | : | |
| | : | Appellate Case No. 23985 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 07-CV-4467 |
| v. | : | |
| | : | (Civil Appeal from |
| JASON STANLEY, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . . . .

TERRY L. LEWIS, Atty. Reg. #0010324, Terry L. Lewis Co., LPA, 111 West First Street, Suite 1000, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

SCOTT G. OXLEY, Atty. Reg. #0039285, Scott G. Oxley Co., LPA, 325 North Main Street, Suite 204, Springboro, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}  Jason Stanley appeals from a jury verdict in favor of appellee Word of God Church  on its claims against him for negligence, breach of contract, and fraud. The claims stemmed from allegedly faulty work performed by Stanley and another contractor, Thomas

Hemmelgarn, when they erected a new worship facility for the church.

{¶ 2}   Stanley advances six assignments of error on appeal. First, he contends the trial court erred in granting the church a directed verdict on the invalidity of a release agreement he signed. Second, he claims the jury erred in finding that he had entered into a partnership or joint venture with Hemmelgarn.[1] He further claims the trial court erred in prohibiting him from presenting evidence or argument about the partnership or joint venture being dissolved. Third, he argues that the trial court erred in allowing the church to introduce evidence about the existence or non-existence of liability insurance. Fourth, he asserts that the trial court erred in denying his motion for a directed verdict on the issue of whether a partnership or joint venture existed. Fifth, he contends the trial court erred in instructing the jury on the issue of fraud and in failing to sustain his motion for a directed verdict on that issue. Alternatively, he claims the weight of the evidence establishes that he did not commit fraud. Sixth, he argues that the trial court erred in denying his motion for a directed verdict on a proximate cause issue.

{¶ 3}   The record reflects that Garnell Crawford, the pastor of the Word of God Church, met with Stanley and Hemmelgarn in the summer of 2006 to discuss their interest in constructing a new worship facility. At that time, church members had acquired a parcel of land, cleared the property, and purchased a large, prefabricated building. Crawford was interested in having Stanley and Hemmelgarn erect the steel frame and assemble the building. After some discussions, Hemmelgarn drafted a proposed labor contract for the project. The

---

[1] At one point, Stanley contends the trial court erred in finding a partnership or joint venture. (Appellant's brief at 2). Later, however, he claims the jury erred in finding a partnership or joint venture. (Id. at 14). The record reveals that the jury actually found the existence of a partnership or joint venture, not the trial court.

proposal identified "Stanley/Hemmelgarn" as the "Builders-SubContractors." It provided for Stanley and Hemmelgarn to construct the building for $36,800 to be paid in weekly draws based on total hours worked. Crawford made no changes to the proposal, took it to the church's board, and obtained approval. Crawford, Stanley, and Hemmelgarn signed the contract on June 26, 2006. The parties also entered into a separate contract that awarded Stanley and Hemmelgarn $9,500 to rent construction equipment.

{¶ 4}   Later that summer, Stanley and Hemmelgarn informed Crawford that they were having trouble erecting the structural steel. According to Hemmelgarn, labeling and numbering on the steel beams had worn away since the building package had been delivered in 2004. As a result of delays caused by the problem, Stanley and Hemmelgarn asked Crawford for another $20,510 to cover their increased labor expenses. They supported the request with a written amendment to the contract. The church's board approved the amendment, raising the total project cost (labor plus equipment rental) to more than $66,000.

{¶ 5}   Thereafter, Stanley and Hemmelgarn continued their work on the building. They took weekly draws against the total contract price based on the number of hours worked multiplied by an aggregate sum of $92 per hour. In October 2006, the structural steel had been set and work had begun on sheathing and siding around the steel. By that time, Crawford already had paid Stanley and Hemmelgarn draws of approximately $56,000 against the $66,000 total project bid.

{¶ 6}   On October 12, 2006, Stanley met Crawford at a fast-food restaurant and presented him with a written release agreement. Stanley explained that he was having personal and professional problems and claimed that he could not devote the necessary time to the

construction project. As a result, he asked Crawford to release him from the agreement to erect the worship facility. Crawford agreed and signed the release, which provided in pertinent part: "Jason Stanley is released as a party to these contracts and Jason Stanley shall have no further rights, duties or obligations under or arising from the contracts, including no obligation to perform further work during construction completion or under warranty thereafter and the parties release and discharge Jason Stanley and hold him harmless thereon."

{¶ 7}  Hemmelgarn also signed the release and continued the project from that point on without Stanley's help. On December 9, 2006, a severe storm with high winds hit the area. As a result of the storm, Crawford had the building inspected and discovered significant problems beyond anything caused by the wind. In particular, the inspection revealed that the steel frame was not plumb, that the steel had been incompletely and incorrectly assembled, and that other material problems existed. The inspector recommended disassembling the building, straightening the steel, if possible, and then reinstalling new insulation, roofing, siding, and trim. The inspector characterized the building as "unsafe in its current condition," adding that it "obviously [had] been erected by inexperienced or otherwise unqualified people."  At trial, Crawford presented evidence that it would cost more than $201,000 for labor and new materials to disassemble the building and put it together correctly.

{¶ 8}  Following the presentation of evidence, the trial court entered a directed verdict in favor of the church on the invalidity of the release agreement between Crawford and Stanley. The trial court found, for various reasons, that the release was unenforceable against the church. In making this determination, the trial court specifically cited insufficiency of the consideration for the release, the existence of a mutual mistake, and unconscionability. The

jury subsequently found in the church's favor on its claims against Stanley for negligence, breach of contract, and fraud. The trial court entered final judgment against Stanley and Hemmelgarn for $201,810 in compensatory damages, $2,200 in punitive damages, and $55,559.75 in attorney fees.[2] This timely appeal followed.

{¶ 9} In his first assignment of error, Stanley contends the trial court erred in granting the church a directed verdict on the invalidity of the release agreement.[3] In support, he disputes the trial court's finding that he failed to provide consideration in exchange for Crawford releasing him from the contracts. Stanley contends his own testimony, if believed, would support a finding that he forfeited compensation for twenty to thirty hours of work in exchange for the release.

{¶ 10} Upon review, we find this assignment of error unpersuasive for at least two independent reasons. First, as set forth above, the trial court declared the release invalid on multiple grounds, including a lack of consideration, mutual mistake, and unconscionability. In his appellate brief, Stanley has addressed only the consideration issue while failing even to mention the other grounds relied on by the trial court. Absent any argument from Stanley challenging the trial court's findings of mutual mistake and unconscionability, we have no basis to reverse its ruling.

{¶ 11} Second, with regard to the consideration issue, we find no error in the trial court's ruling. "A release is a contract that requires an offer, acceptance, and consideration

---

[2] Prior to Stanley's trial, a default judgment had been entered against Hemmelgarn, who has not appealed.

[3] Stanley also contends the trial court erred in overruling his motion for summary judgment and his motion for a directed verdict on the validity of the release. In light of our determination, infra, that the trial court properly entered a directed verdict in favor of the Word of God Church, it necessarily did not err in failing to rule in Stanley's favor on the same issue.

like any other contract." *Barnes v. Ricotta* (2001), 142 Ohio App.3d 560, 566. At trial, Stanley testified that he and Crawford agreed he would forego payment for twenty to thirty hours of work in exchange for being released from the contracts. Crawford denied this assertion, and the record is devoid of any documentary evidence to support it. In the context of a directed verdict, however, we must construe the evidence in a light most favorable to Stanley and accept as true his claim that the parties agreed Stanley would forego payment in exchange for the release. *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St.2d 66, 68 ("When a motion for a directed verdict is entered, what is being tested is a question of law; that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses; it is in the nature of a demurrer to the evidence and assumes the truth of the evidence supporting the facts essential to the claim of the party against whom the motion is directed, and gives to that party the benefit of all reasonable inferences from that evidence.").

{¶ 12} Nevertheless, accepting Stanley's testimony as true, the record supports the trial court's determination that Stanley actually provided no consideration for the release. As set forth above, Stanley and Hemmelgarn agreed to construct a completed worship facility in exchange for roughly $66,000 (including the initial contract, the amendment, and the cost of renting equipment). Although the two men took weekly draws against this bid amount based on hours worked, they were not hourly laborers. The payments were no more than draws against the contract price. Stanley admitted at trial that when the release was signed he and Hemmelgarn already had received approximately $56,000 despite the fact that the building was only fifty percent completed. Thus, under their agreement with Crawford, they were

entitled to only about $10,000 more to finish the remaining fifty percent of the work. Despite this fact, Hemmelgarn proceeded to collect roughly $35,000 more from Crawford in weekly draws after Stanley withdrew from the project. As a result, Crawford actually ended up paying roughly $102,000 whereas the contracts only entitled Stanley and Hemmelgarn to $66,000.

{¶ 13} Even setting aside Crawford's evidence that the worship facility presently is worthless, the foregoing facts persuade us that Stanley was not entitled to any additional compensation when he allegedly told Crawford that he would forego payment in exchange for the release. At that point, Stanley and Hemmelgarn already had been paid about eighty-five percent of their total bid price but had performed only fifty percent of the work. Nor does the record reflect that Stanley or Hemmelgarn ever actually reduced the total bid price to account for Stanley's allegedly forgiven hours. To the contrary, Hemmelgarn proceeded to collect about $35,000 from Crawford in addition to the contract price.

{¶ 14} This court has recognized that a promise to do something a party already is bound to do does not constitute additional consideration. *Bourekis v. Saidel & Associates* (June 2, 1994), Montgomery App. No. 14105. By the same token, Stanley's promise to forego something that he was not entitled to did not constitute consideration for the release. The first assignment of error is overruled.

{¶ 15} In his second assignment of error, Stanley claims the jury erred in finding that he had entered into a partnership or joint venture with Hemmelgarn. He further claims the trial court erred in preventing him from presenting evidence or argument about the partnership or joint venture being dissolved in October 2006.

{¶ 16} With regard to the jury's finding of a partnership or joint venture, we see no

error. The record contains ample evidence to support such a finding. "[A] partnership exists where there is '[1] an express or implied partnership contract between the parties; [2] the sharing of profits and losses; [3] mutuality of agency; [4] mutuality of control; and [5] co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds.'" *Grendell v. Ohio Environmental Protection Agency* (2001), 146 Ohio App.3d 1, 13, quoting *Anchor v. O'Toole* (C.A.6, 1996), 94 F.3d 1014, 1024.

{¶ 17} Here the record contains evidence that Hemmelgarn represented to Crawford, in Stanley's presence, that the two men were a partnership. Furthermore, the record is replete with evidence that Stanley and Hemmelgarn were acting jointly as general contractors who enjoyed mutual agency, control, and ownership. They also shared between themselves the weekly draws they took. On the record before us, the jury reasonably concluded that Stanley and Hemmelgarn were partners.

{¶ 18} Stanley's alternative argument that the partnership dissolved in October 2006 relies on the October 12, 2006 release he signed. Stanley asserts that once his partnership with Hemmelgarn dissolved pursuant to the release agreement, he no longer could be held liable for any of the partnership's obligations or liabilities. As a result, he contends the trial court erred in not allowing him to raise the dissolution issue and argue it at trial. In support, he cites R.C. 1775.35.[4] As the Word of God Church notes, however, the statute provides that a dissolution does not discharge a former partner from liability unless the client agrees to the discharge.

---

[4] We note that R.C. 1775.35 and other provisions of the Ohio Uniform Partnership Act were repealed effective January 1, 2010. The statute remained in effect, however, at the time of Stanley's 2009 trial.

{¶ 19} Although Crawford agreed to release Stanley from liability, we have affirmed the trial court's finding that the release was invalid, at least as between Crawford and Stanley. Absent the release, there is no basis for finding that dissolution of the partnership discharged Stanley from liability to the Word of God Church. As a result, the trial court did not err in preventing him from presenting evidence or argument about his partnership with Hemmelgarn being dissolved. Without Crawford's consent, any agreement between Stanley and Hemmelgarn to dissolve their partnership was irrelevant to the issue of Stanley's potential liability to the church. For that reason, the trial court did not err in refusing to instruct the jury that dissolution of the partnership would relieve Stanley from liability to the church. The second assignment of error is overruled.

{¶ 20} In his third assignment of error, Stanley contends the trial court erred in allowing the Word of God Church to introduce evidence about the existence or non-existence of liability insurance. This argument concerns a pre-trial motion in limine the church filed. Therein, the church sought permission to inquire at trial about whether Stanley or Hemmelgarn had purchased insurance to cover the performance of their construction work. The church alleged that Stanley and Hemmelgarn had represented to Crawford, before any contract was signed, that they had proper coverage. The church further alleged that the contract at issue required coverage. Finally, the church alleged that Stanley and Hemmelgarn had breached the contract, and committed fraud, in part by failing to carry the necessary coverage. Stanley opposed the motion, relying on Evid.R. 411, which provides: "Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of

evidence of insurance against liability when offered for another purpose[.]"

{¶ 21} After reviewing the parties' arguments, the trial court ruled in the church's favor on its motion. The trial court reasoned that evidence about insurance was not being used to show that the defendants had acted negligently or wrongfully. Instead, it was being offered as an element of the church's claims and an element of the construction contract. On appeal, Stanley contends the trial court erred in its ruling.

{¶ 22} We reject Stanley's argument for two reasons. First, this court has recognized that a ruling on a motion in limine is merely preliminary and, therefore, cannot serve as the basis for an assignment of error on appeal. *State v. Baker*, 170 Ohio App.3d 331, 2006-Ohio-7085, ¶9. We need not review a trial court's ruling on a motion in limine unless the error is preserved by a timely objection when the issue is reached at trial. Id. In the present case Stanley complains about the trial court's ruling on the motion in limine, but he has not identified (and we have not found) anywhere in the record where he raised the issue at trial.

{¶ 23} Second, even if Stanley did raise the issue at trial, we find his argument to be unpersuasive. The general rule against allowing evidence of liability insurance serves dual purposes. It excludes evidence that usually is not particularly relevant, and it guards against the possibility that a jury will return an excessive award because a "deep pocket" exists. *Prymas v. Kassai*, 168 Ohio App.3d 123, 2006-Ohio-3726, ¶35. In the present case, however, evidence about the existence or non-existence of insurance coverage was relevant. Indeed, it was impossible for the church to argue that Stanley had breached a contract and committed fraud in part by failing to have proper insurance coverage without introducing evidence about

the existence or non-existence of insurance coverage.[5] Cf. *City of Cleveland v. Peter Kiewit Sons' Co.* (6th Cir. Ohio 1980), 624 F.2d 749, 758 ("The Court below correctly observed that this 'mention of insurance was inevitable in the course of the trial by reason of the fact that matters of insurance coverage were included in the contracts between the parties.'"). We note, too, that potential concerns about a "deep pocket" insurance company being identified did not apply here, as the church argued that Stanley and Hemmelgarn *lacked* any coverage. The third assignment of error is overruled.

{¶ 24} In his fourth assignment of error, Stanley asserts that the trial court erred in denying his motion for a directed verdict regarding whether a partnership or joint venture existed. This assignment of error is overruled based on our resolution of Stanley's second assignment of error above. Having already determined that the jury properly found the existence of a partnership, we reject his argument that the trial court should have directed a verdict in his favor on the issue. The fourth assignment of error is overruled.

{¶ 25} In his fifth assignment of error, Stanley contends the trial court erred in instructing the jury on the issue of fraud and in failing to sustain his motion for a directed verdict on that issue. Alternatively, he claims the weight of the evidence establishes that he did not commit fraud.

---

[5] On appeal, Stanley continues to insist that he had purchased some type of insurance through the Western Reserve Insurance Company. In response to this assertion, we make two observations. First, even if Stanley did take out insurance, it is undisputed that the church never received compensation from any insurance purchased by Stanley or Hemmelgarn. Although Stanley may have purchased insurance, it did not provide coverage for the loss at issue, which is what the church alleged was required. Second, even if Stanley could establish that he had purchased the required insurance coverage, this would not render the insurance issue irrelevant. Such evidence simply would refute, in part, the church's breach-of-contract and fraud claims on their merits. Evidence about the existence or non-existence of insurance coverage still would remain central to the church's causes of action.

**{¶ 26}** With regard to the jury instruction, Stanley claims fraudulent non-disclosure requires proof of a fiduciary or other special relationship between the parties. Absent such a relationship, which allegedly did not exist, Stanley insists that he could not be liable for fraudulent non-disclosure. As a result, he contends the trial court erred in instructing the jury on that issue. We disagree. The existence of a fiduciary or other special relationship is not always required before a duty to disclose arises. "Generally, under Ohio law, this duty arises in business transactions only where (1) the parties are in a fiduciary relationship; (2) both parties to the transaction understand that a special trust or confidence has been reposed; *or (3) full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts*." *Gator Dev. Corp. v. VHH, Ltd.*, Hamilton App. No. C-080193, 2009-Ohio-1802, ¶28 (emphasis added), citing *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 101. Stanley's argument lacks merit because the italicized language, which is essentially what the trial court instructed the jury, is a correct statement of law.

**{¶ 27}** In reaching the foregoing conclusion, we find Stanley's reliance on *Fifth Third Bank v. Cope*, 162 Ohio App.3d 838, 2005-Ohio-4626, and *State v. Warner* (1990), 55 Ohio St.3d 31, to be unpersuasive. *Cope* and *Warner* both recognized that a duty to disclose arises when a fiduciary or other special relationship exists between the parties. We do not disagree. Neither case held, or even suggested, however, that this is the only time a duty to disclose arises. As set forth above, such a duty also arises when "full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." *Gator Dev. Corp.*, at ¶28. The *Warner* decision, upon which Stanley relies, expressly recognized this fact. There the Ohio Supreme Court observed that "'a party is under a duty to

speak, and therefore liable for nondisclosure, if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading.'" *Warner*, 55 Ohio St.3d at 54, quoting *Miles v. McSwegin* (1979), 58 Ohio St.2d 97, 100.

**{¶ 28}** We also reject Stanley's argument that the trial court erred in failing to direct a verdict in his favor on the issue of fraud. Stanley contends the basis for the fraud claim was that he and Hemmelgarn allegedly had made misrepresentations to Crawford about their experience, insurance coverage, and warranty. According to Stanley, the record lacks evidence to support a finding of fraud on any of these grounds.

**{¶ 29}** Having reviewed the record, we believe the trial court properly declined to enter a directed verdict in Stanley's favor on the fraud claim. "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion * * *." Civ.R. 50(A)(4). On the other hand,"if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115.

**{¶ 30}** The trial court instructed the jury that the church alleged fraud based on misrepresentations Stanley and Hemmelgarn had made about (1) their experience erecting

large commercial buildings, (2) whether they were insured for all construction-related problems, and (3) the warranty they provided. The trial court also instructed the jury that it was not required to find fraud on each of these grounds. Rather, the trial court explained that a finding of fraud on any one of them would be sufficient to support a verdict in the church's favor.

{¶ 31} Construing the evidence in a light most favorable to the church, we believe reasonable minds could find fraud based on at least one of the foregoing grounds. When Stanley and Hemmelgarn initially met Crawford to discuss submitting a bid for the construction job, he asked them about their experience. Specifically, he inquired about whether they were qualified to erect a big building and whether they had "ever done anything like this." According to Crawford, Stanley and Hemmelgarn responded that they were partners and had done "numerous jobs together." Crawford recalled that Hemmelgarn also mentioned having "worked on the Living Word Church," which Crawford knew was a huge facility. On cross examination, Crawford reiterated that he specifically asked whether Stanley and Hemmelgarn "had the expertise to put up a building like [his]." According to Crawford, "[b]oth of them [responded] yeah, they've done a lot of projects together."

{¶ 32} Crawford further testified that he relied on the representations made by Stanley and Hemmelgarn when he hired them. When considered in light of other evidence in the record, and when construed most strongly in favor of the Word of God Church, the statements Stanley and Hemmelgarn made about their qualifications reasonably could be viewed as materially misleading half-truths. A trier of fact reasonably could infer from Crawford's testimony that the two men held themselves out as being experienced in erecting large steel

buildings and qualified to do so. Indeed, Crawford testified that he would not have hired them otherwise.

{¶ 33} In reality, the record supports a finding that Stanley and Hemmelgarn had little experience performing the scope of work Crawford's project required. Almost all of what Stanley and Hemmelgarn had done together was residential remodeling. Stanley admitted at trial that he had *no* experience in the construction of large commercial buildings beyond some heating, ventilation, and air conditioning work. As for Hemmelgarn, the record reflects that he had performed some work on the Living Word Church in Vandalia, Ohio. He admitted at trial, however, that he did not work as a contractor or even as an employee. Rather, he performed volunteer tasks along with many fellow members of the congregation. The only other non-residential experience Hemmelgarn claimed at trial involved working on a commercial job with Stanley to help construct the second floor of a facility known as "The Greene." In his own testimony, Stanley appeared to deny that he and Hemmelgarn had worked together on the project. In any event, the only experience erecting steel that Hemmelgarn mentioned at trial involved constructing residential "pole barns" and doing volunteer work on "a storage building" for the Living Word Church.

{¶ 34} When evaluating the qualifications possessed by Stanley and Hemmelgarn, a trier of fact also reasonably could take into account the end result. On that issue, commercial construction expert Dean Harlamert described numerous defects in the construction of the worship facility at issue. After estimating that he had examined thousands of buildings, he opined that the facility Stanley and Hemmelgarn had built for Crawford was "without question the poorliest [sic] erected building that [he had] ever inspected." According to Harlamert, the

issue was "[n]ot even close."

{¶ 35} In light of the foregoing evidence, a trier of fact reasonably could find that Stanley and Hemmelgarn made misleading representations about their qualifications and experience and, further, that "full disclosure [was] necessary to dispel misleading impressions that * * * might have been created by partial revelation of the facts." *Gator Dev. Corp.*, at ¶28. As a result, we cannot say the trial court erred in allowing the fraud claim to go to the jury based on materially misleading representations Stanley and Hemmelgarn made about their qualifications and experience.[6]

{¶ 36} For much the same reason, we also reject Stanley's ultimate argument that the jury's finding of fraud is against the weight of the evidence. Under the civil manifest-weight-of-the-evidence standard, a judgment supported by some competent, credible evidence going to all the essential elements of a claim will not be reversed. *Sullivan v. Curry*, Montgomery App. No. 23293, 2010-Ohio-5041, ¶42.

{¶ 37} "A claim for common-law fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Sutton Funding, LLC   v. Herres*, 188 Ohio App.3d 686, 697, 2010-Ohio-3645, ¶49.

---

[6] In light of this determination, we need not decide whether adequate evidence existed to support a fraud claim based on representations the two men made to Crawford regarding their insurance coverage and their warranty.

{¶ 38} The record before us contains competent, credible evidence on each of the foregoing elements. The evidence supports a finding that Stanley and Hemmelgarn, acting as partners, collectively made materially false representations about their qualifications (or, at a minimum, made misleading representations without the full disclosure required by *Gator Dev. Corp.* and the other cases cited above). The evidence further supports a finding that they intended for Crawford to rely on their representations and that he justifiably did rely on those representations when accepting their bid. Finally, the evidence supports a finding that the Word of God Church suffered an injury proximately caused by Crawford's reliance on the representations. The fifth assignment of error is overruled.

{¶ 39} In his sixth assignment of error, Stanley contends the trial court erred in denying his motion for a directed verdict regarding proximate cause. In support of his motion below, Stanley claimed the church had failed to present expert testimony establishing that the defendants' deficient work had proximately caused any damages. As did the trial court, we reject this argument.

{¶ 40} Assuming, arguendo, that expert testimony was necessary in this case,[7] the record contains it. As noted above, the Word of God Church presented testimony from construction expert Harlamert. He identified various material defects in the construction of the worship facility and testified that none of the problems he saw were related to a windstorm. According to Harlamert, all of the problems were "installation related." Although he did not use the words "proximate cause," he unquestionably conveyed his expert opinion that

---

[7]When the existence of a causal connection involves consideration of matters within the common knowledge of an average juror, expert testimony is not required. See, e.g., *Lasley v. Nguyen*, 172 Ohio App.3dd 741, 2007-Ohio-4086, ¶19.

deficient work by Stanley and Hemmelgarn had caused the problems at issue. Thus, the trial court properly denied Stanley's motion for a directed verdict on the proximate cause issue. The sixth assignment of error is overruled.

{¶ 41} Having overruled each assignment of error, we affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

FAIN and BROGAN, JJ., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Terry L. Lewis
Scott G. Oxley
Hon. Mary L. Wiseman