[Cite as *Levy v. Seiber*, 2016-Ohio-68.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| R.K. LEVY, | : | |
| | | CASE NOS. CA2015-02-019 |
| Plaintiff-Appellee/ | : | CA2015-02-021 |
| Cross-Appellant, | | CA2015-02-030 |
| | : | |
| | | O P I N I O N |
| - vs - | : | 1/11/2016 |
| | : | |
| DANE SEIBER, et al., | | |
| | : | |
| Defendants-Appellants/ | | |
| Cross-Appellees. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2011-12-4517


Christopher J. Minnillo, 1500 West Third Avenue, Suite 210, Columbus, Ohio 43212, for plaintiff-appellee/cross-appellant

Chad D. Cooper, 810 Sycamore Street, Third Floor, Cincinnati, Ohio 45202, for defendants-appellants/cross-appellees, Dane Seiber and Kimberly A. Seiber

Dennis L. Adams, P.O. Box 643, 10 Journal Square, Suite 400, Hamilton, Ohio 45012, defendants-appellants/cross-appellees, William Sumpter and Kimberly Sumpter


**M. POWELL, P.J.**

{¶ 1} Defendants-appellants/cross-appellees, Dane and Kimberly Seiber, defendants-appellants/cross-appellees, William and Kimberly Sumpter, and plaintiff-appellee/cross-appellant, R.K. Levy, appeal a decision of the Butler County Court of

Common Pleas involving the sale of a swingers' club. For the reasons stated below, we affirm in part and reverse in part the decision of the trial court.

{¶ 2} Double K and BD Enterprises is a corporation that operates an adult swingers' club in Middletown Ohio. Double K was incorporated in 2009 and owned in equal parts by Dane and Kimberly Seiber, William and Kimberly Sumpter, and Gary and Christina Roth. In 2011, the Sumpters wished to sell their shares of Double K. Levy, who operates a similar business, became interested in Double K after allegedly hearing that the business was doing well and the owners were earning $500 a week. During this time, Levy purportedly requested the tax returns and other corporate records of Double K and did not receive them. On May 26, 2011, the Sumpters entered into a "purchase agreement" to sell Levy their interest in Double K for $65,000. The purchase agreement also contained a provision pursuant to which Levy was to purchase the Seibers' shares in the business upon their demand. The purchase agreement indicated that the Seibers and the Sumpters each owned 50 percent of Double K.

{¶ 3} Before the closing of the purchase, Levy became aware that the business was in fact owned in one-third portions by the Seibers, the Sumpters, and the Roths. Nevertheless, Levy continued with the deal and the closing occurred on June 3, 2011. At the closing, Levy paid to the Sumpters the balance owed to them under the purchase agreement. Double K purchased back the shares owned by the Roths for $11,000, by way of a $10,000 loan from the Sumpters and a promise of future payments. The loan from the Sumpters was evidenced by a "promissory note" and was secured by five percent of the nonvoting stock in Double K. The promissory note indicated that Levy and the Seibers were jointly and severally, personally liable for the debt owed to the Sumpters.

{¶ 4} After purchasing shares in Double K, Levy discovered the corporation had

never been profitable. Eventually, the Sumpters stopped receiving payments owed to them under the promissory note. Thereafter, Dane Seiber, who had acquired his wife's shares, demanded, pursuant to the purchase agreement, that Levy purchase his shares of Double K. Levy refused.

{¶ 5} In December 2011, Levy filed suit against the Seibers and the Sumpters alleging several claims, including breach of contract, fraudulent inducement, and negligent misrepresentation. The Sumpters and the Seibers also filed counterclaims against Levy.

{¶ 6} The case proceeded to trial before a magistrate. After a two-day trial, the magistrate issued a written decision granting judgment in favor of Levy on his fraudulent inducement and negligent misrepresentation claims and in favor of the Sumpters on their breach of contract counterclaim. However, the magistrate ruled against Levy on his remaining claims and the Seibers' breach of contract counterclaim. The magistrate found the purchase agreement was void as it was a product of fraud, ordered it to be rescinded, and awarded Levy compensatory damages of $65,000, punitive damages of $1.00, and reasonable attorney fees. The magistrate also entered judgment against Levy and in favor of the Sumpters in the sum of $10,000.

{¶ 7} The parties objected to the magistrate's decision. After a hearing, the trial court issued its written decision and overruled all of the Seibers' and Sumpters' objections because they failed to file a transcript of the proceedings before the magistrate. However, the court sustained Levy's objection as to the award of $10,000 to the Sumpters.

{¶ 8} The parties appealed from the trial court's decision. This court dismissed the appeal as there were outstanding issues left to be resolved. *R.K. Levy v. Seiber, et al.,* 12th Dist. Butler Nos. CA2015-02-019, CA2015-02-021, and CA2015-02-030 (Oct. 7, 2014) (Dismissal Entry). On remand, the trial court granted Levy attorney fees in the amount of

$25,876 and denied any claims not yet ruled upon.

{¶ 9} The Seibers and the Sumpters now appeal, raising several assignments of error. Levy has also cross-appealed, raising one assignment of error. For ease of discussion, we will address the assignments of error out of order.

{¶ 10} Seibers' Assignment of Error No. 3:

{¶ 11} THE TRIAL COURT ERRED BY BASING ITS ADOPTION OF THE MAGISTRATE'S DECISION ON THE FINDING THAT NO TRIAL TRANSCRIPT WAS FILED.

{¶ 12} Seibers' Assignment of Error No. 4:

{¶ 13} THE TRIAL COURT ERRED BY FAILING TO ADDRESS QUESTIONS OF LAW RAISED BY THE SEIBERS.

{¶ 14} Sumpters' Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED IN OVERRULING APPELLANTS' OBJECTIONS TO THE MAGISTRATE'S LEGAL CONCLUSIONS SOLELY BASED UPON THE LACK OF A TRANSCRIPT.

{¶ 16} The Seibers and the Sumpters challenge the trial court's review of the magistrate's decision. First, the parties argue the trial court erred in overruling all of their objections on the basis that a transcript of the hearing before the magistrate was not filed. The parties assert that the transcript was filed after the hearing on objections to the magistrate's decision. Second, the parties maintain that even if the transcript was not before the trial court, the court should have at least considered their objections to the magistrate's legal conclusions.

{¶ 17} A party's objection to a magistrate's factual finding must be supported with a transcript or an affidavit of the evidence submitted to the magistrate. Civ.R. 53(D)(3)(b)(iii).

The objecting party is required to file the transcript or affidavit with the court within 30 days after filing objections unless the time for preparing the transcript is extended. Civ.R. 53(D)(3)(b)(iii). When a transcript is filed out of time, a trial court has broad discretion in deciding whether to consider the transcript. *Ramsey v. Ramsey*, 10th Dist. Franklin No. 13AP-840, 2014-Ohio-1921, ¶ 23.

{¶ 18} In ruling on the objections to a magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). However, when an objecting party fails to timely file a transcript or affidavit, a trial court's independent review of the record is limited to an examination of the magistrate's conclusions of law and recommendations in light of any accompanying findings of fact. *Manninen v. Alvarez*, 12th Dist. Butler No. CA2013-06-106, 2014-Ohio-75, ¶ 21. Moreover, in such an instance, the appellate court is precluded from considering the transcript of the magistrate's hearing and our review regarding factual issues is whether the trial court abused its discretion in applying the law to the magistrate's factual findings. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995); *Singh v. Wadhwa*, 12th Dist. Warren No. CA2013-02-009, 2013-Ohio-3997, ¶ 20.

{¶ 19} In the present case, while the Seibers and the Sumpters objected to the magistrate's decision in February 2014, neither party filed a transcript with the trial court at this time. Instead, the Seibers moved to file an untimely transcript on June 5, 2014, the day of the hearing on the objections to the magistrate's decision. The transcripts were filed in two volumes on July 18 and July 22, 2014. The trial court issued its written decision on August 12, 2014. In its decision, the court overruled the Seibers' motion for leave to file a transcript, noted a transcript had never been filed, and overruled all of the Seibers' and the Sumpters'

objections because the objections "went to credibility issues which can only be reviewed with a full transcript * * *."

{¶ 20} We find that the trial court did not err in overruling the objections of the Seibers and the Sumpters in regards to the magistrate's findings of fact. Neither the Seibers nor the Sumpters filed a transcript of the proceedings before the magistrate in the time allotted by Civ.R. 53(D)(3)(b)(iii). Instead, the Seibers moved to submit the untimely transcript four months after their objections. The transcripts were not filed with the trial court for another five weeks and not until after the hearing upon their objections. While the trial court incorrectly noted in its decision that a transcript had not been submitted, in light of the substantial period of time between the initial filing of the objections and filing of the transcript, the trial court did not abuse its discretion in denying the Seibers' motion and refusing to consider the transcript. Therefore, the trial court's independent review of the record was limited to an examination of the magistrate's conclusions of law and recommendations in light of any accompanying findings of fact.

{¶ 21} However, we find the trial court did err in overruling the objections of the Seibers and the Sumpters insofar as the objections challenged the magistrate's legal conclusions. While a timely transcript was not filed, the trial court was still required to examine the magistrate's legal conclusions. Therefore, while the trial court failed to consider the objections in regards to the legal conclusions, this court will consider these issues and review them under a de novo standard of review. *See Settlers Walk Home Owners Assn. v. Phoenix Settlers Walk, Inc.*, 12th Dist. Warren Nos. CA2014-09-116, CA2014-09-117, and CA2014-09-118, 2015-Ohio-4821, ¶ 15. Consequently, the Seibers and the Sumpters have not suffered any prejudice by the trial court's failure to consider the objections to the magistrate's legal conclusions.

{¶ 22} Accordingly, the Seibers' third and fourth assignments of error and the Sumpters' first assignment of error are overruled.

{¶ 23} Seibers' Assignment of Error No. 1:

{¶ 24} THE TRIAL COURT ERRED BY ADOPTING THE CONCLUSIONS OF LAW IN THE MAGISTRATE'S DECISION.

{¶ 25} Sumpters' Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ERRED IN ADOPTING THE CONCLUSIONS OF LAW IN THE MAGISTRATE'S DECISION.

{¶ 27} The Seibers challenge the trial court's adoption of the magistrate's rulings in favor of Levy upon his fraudulent inducement and negligent misrepresentation claims.[1] The Sumpters also challenge the ruling in favor of Levy on his fraud and negligent misrepresentation claims. We will address these arguments in turn.

**Fraud**

{¶ 28} The Seibers and the Sumpters argue the magistrate erred in finding Levy was fraudulently induced into the purchase agreement due to the Seibers' and the Sumpters' failure to disclose Double K's financial condition, provide corporate records, and disclose the additional owners of Double K. The Seibers and the Sumpters assert that the magistrate's fraud analysis fails for three reasons: (1) they owed no duty to disclose information to Levy, (2) Levy did not justifiably rely on the nondisclosures because he failed to conduct any due diligence, and (3) any affirmative misrepresentations by the parties was mere "puffing."

{¶ 29} As stated above, this court is precluded from considering the transcript of the magistrate's hearing and our review regarding factual issues is whether the trial court abused its discretion in applying law to the magistrate's factual findings. *Singh*, 2013-Ohio-3997 at ¶

---

1. The Seibers also challenge the punitive damages award in their first assignment of error. We will discuss the punitive damages award later in the opinion.

20. We will also review legal questions under a de novo standard of review. *Settlers Walk.*, 2015-Ohio-4821 at ¶ 15.

{¶ 30} The elements of fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 73 (1986); *Nguyen v. Chen*, 12th Dist. No. Butler No. CA2013-10-191, 2014-Ohio-5188, ¶ 24.

{¶ 31} Fraud may consist not only of an affirmative misrepresentation, but also of nondisclosure when there is a duty to disclose. Generally, in arm's-length business transactions, each party is presumed to have the opportunity to ascertain relevant facts, and therefore, neither party has a duty to disclose material information to the other. *Blon v. Bank One*, 35 Ohio St.3d 98, 101 (1988). However, a duty to speak arises in business dealings when the parties are in a fiduciary relationship, both parties to the transaction understand that a special trust or confidence has been reposed, or *full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts*. *Id.*; *Word of God Church v. Stanley*, 2d Dist. Montgomery No. 07-CV-4467, 2011-Ohio-2073, ¶ 26-27. For example, a party must speak upon failing "'to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the nondisclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading.'" *State v. Warner*, 55 Ohio St.3d 31, 54 (1990), quoting *Miles v. McSwegin*, 58 Ohio St.2d 97, 100

(1979).

{¶ 32} We find that the trial court did not err in adopting the magistrate's conclusion that Levy was fraudulently induced into the purchase agreement in regards to the misimpression created by the Seibers and the Sumpters as to financial profitability and their failure to provide requested documents. While the sale of the business was an arm's-length transaction, the Seibers and the Sumpters engaged in conduct that created a misleading impression that the business was doing well financially, when in fact it had never been profitable. In its decision, the magistrate recited Levy's testimony, which it found to be on "all matters more credible," that he was told by a volunteer, the Seibers, and the Sumpters that the club was "doing great" and drawing $500 per week. Under these circumstances, it was the duty of the sellers to correct these misimpressions. Instead of clarifying the financial status of Double K, the Seibers and the Sumpters proceeded along with the sale and impeded Levy's ability to view the corporation's financial records. While the Seibers and the Sumpters maintained that Levy never asked about the financial condition of the business and did not request the financial records, the magistrate found that it was unlikely Levy, a person who already operates a similar business, "would fail to make at least cursory inquires as to profitability and conduct of business operations." *See Long v. Rice*, 11th Dist. Ashtabula No. 2012-A-0056, 2013-Ohio-2402, ¶ 19-22; *Word of God Church* at ¶ 31-32. This is a significant factual finding to which we must defer, particularly in the absence of a transcript of the proceedings before the magistrate.

{¶ 33} We also disagree that Levy's alleged lack of due diligence to investigate the company made his reliance on the failure to disclose certain information not justified. The question of justifiable reliance is a factual determination. *Nguyen,* 2014-Ohio-5188 at ¶ 25. The magistrate found that Levy's reliance was justified and that the Seibers and the

Sumpters failed to provide the corporation's financial records to Levy so that he could complete his due diligence. Therefore, the trial court did not abuse its discretion in adopting the magistrate's finding that Levy's reliance was justified. Moreover, we also do not find that any misrepresentation about Double K's profitability was harmless "puffing." While predictions about the future or statements of opinion are not actionable misrepresentations, in this case the Seibers and the Sumpters took several affirmative actions that created an impression of financial profitability or, at least, obstructed Levy's ability to obtain an accurate financial view of the company. *See Kondrat v. Morris*, 118 Ohio App. 3d 198, 207 (8th Dist.1997).

{¶ 34} We do find error with regard to the magistrate's determination that Levy was fraudulently induced into the purchase agreement by the representation that the club was owned by the Seibers and the Sumpters in one-half shares, when in fact the Roths also owned a portion of the club. Levy was aware of the Roths' ownership interest prior to the time the purchase agreement closed on June 3, 2011. Despite having this knowledge, Levy not only proceeded with the closing, but entered into a separate arrangement with the Sumpters and the Seibers to acquire the Roths' interest. Therefore, Levy has waived any argument that this issue had significance in his decision to purchase the club. Nonetheless, we find that the other evidence supports Levy's fraud claim. Consequently, we find the trial court did not err in adopting the magistrate's conclusion that Levy was fraudulently induced in the purchase agreement.

### Negligent Misrepresentation

{¶ 35} The Seibers and the Sumpters also challenge the trial court's adoption of the magistrate's finding that Levy prevailed on his negligent misrepresentation claim due to the representation of William Sumpter and the purchase agreement indicating that the Seibers

and the Sumpters were the sole, equal owners of the company, when in fact, the Roths' owned one-third of the company. Both the Seibers and the Sumpters raise a number of arguments as to why this constituted error, including, that they are not in the business of supplying information and Levy did not rely on the alleged misrepresentation.

{¶ 36} The elements of negligent misrepresentation are as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. Cleveland Heights*, 41 Ohio St.3d 1, 4 (1989); *N. Am. Herb & Spice Co., LTD, LLC v. Appleton*, 12th Dist. Butler No. CA2010-02-034, 2010-Ohio-4406, ¶ 34.

{¶ 37} The Eighth District has summarized the elements of negligent misrepresentation as requiring "(1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant." *Hamilton v. Sysco Food Servs. Of Cleveland Inc.*, 170 Ohio App.3d 203, 2006-Ohio-6419, ¶ 20 (8th Dist.), quoting *Nichols v. Ryder Truck Rentals, Inc.*, 8th Dist. Cuyahoga No. 65376, 1994 WL 285000, *4 (June 23, 1994). The class of persons who are in the business of supplying information to others is limited to certain professionals, such as "attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks." *Id.* at ¶ 21. The claim also requires that a plaintiff seek guidance with respect to the business transaction, such as when there is a special relationship between the parties and the plaintiff specifically relies upon the defendant for advice. *McNabb v. Hoeppner*, 5th Dist. Richland No. 10CA124, 2011-Ohio-3224, ¶ 21-22.

{¶ 38} The magistrate's findings of fact did not establish that the Seibers and the

Sumpters are among the class of persons subject to liability under negligent misrepresentation or that Levy sought guidance from them in regards to the purchase. Instead, this case involved an arm's-length purchase of an interest in a swingers' club where the Sumpters were selling their interest to Levy and the Seibers were anticipated business partners with Levy. The Seibers and the Sumpters are not in the business of supplying information to others, were not paid by Levy or otherwise compensated to advise him regarding the purchase, did not offer guidance on the purchase, and did not represent Levy in the purchase. *See McNabb* at ¶ 22; *Cleveland Constr., Inc. v. Roetzel & Andress, L.P.A.*, 8th Dist. Cuyahoga No. 94973, 2011-Ohio-1237, ¶ 40.

{¶ 39} Additionally, as our discussion of the fraud claims indicates, Levy did not justifiably rely on any misrepresentation regarding the ownership of Double K and has waived any argument that this issue had significance in his decision to purchase the club. Consequently, we find the trial court erred in adopting the magistrate's conclusion that Levy prevailed on his negligent misrepresentation claim against the Seibers and the Sumpters.

{¶ 40} The Seibers' first assignment of error and the Sumpters' second assignment of error are overruled in part and sustained in part.

{¶ 41} Seibers' Assignment of Error No. 2:

{¶ 42} THE TRIAL COURT ERRED BY FAILING TO ENTER JUDGMENT IN FAVOR OF THE SEIBERS ON THEIR CLAIMS.

{¶ 43} Sumpters' Assignment of Error No. 3:

{¶ 44} THE TRIAL COURT ERRED IN SUSTAINING APPELLEE'S OBJECTION TO THE MAGISTRATE'S DECISION.

{¶ 45} The Seibers and the Sumpters challenge the effect of the rescission of the purchase agreement on their remaining claims. The Seibers argue that even if the purchase

agreement was properly rescinded, the trial court should have considered their counterclaims against Levy. The Sumpters argue the trial court erred in determining that due to the rescission of the purchase agreement, the Sumpters could not recover under the promissory note.

{¶ 46} A party who is fraudulently induced to enter a contract may sue to rescind the contract. *Butler Cty. Bd. of Commrs. v. Hamilton*, 145 Ohio App.3d 454, 472 (12th Dist.2001). Rescission is not merely a termination of the contract; it is an annulment of the contract. *Rosepark Properties, Ltd. v. Buess*, 167 Ohio App.3d 366, 2006-Ohio-3109, ¶ 51 (10th Dist.), citing *Mid-America Acceptance Co. v. Lightle*, 63 Ohio App.3d 590, 599 (10th Dist.1989). "The primary purpose of rescission is to restore the status quo and return the parties to their respective positions had the contract not been formed." *Id.* Moreover, a contract that has been rescinded "is ineffective *ab initio* and no rights may be predicated upon that contract." *May v. State Farm Ins. Co.*, 10th Dist. Franklin No. 90AP-1407, 1991 WL 81925 (May 14, 1991).

### Seibers' Counterclaims

{¶ 47} The Seibers alleged counterclaims against Levy for breach of contract, breach of the duty of good faith and loyalty, fraudulent inducement, promissory estoppel, and negligent misrepresentation. The counterclaims alleged that Levy breached the purchase agreement and committed fraud and negligent misrepresentation when he represented that he would buy the Seibers' shares in Double K if so requested, but ultimately failed to do so. The Seibers also asserted that once Levy signed the purchase agreement, he became a shareholder of the corporation and owed them a duty of good faith and loyalty. In the magistrate's decision, after determining Levy should prevail on his fraud and negligent misrepresentation claim, the magistrate ordered the purchase agreement to be rescinded.

The magistrate denied the Seibers' breach of contract counterclaim due to the rescission of the purchase agreement. The trial court adopted this conclusion and denied the remaining counterclaims asserted by the Seibers.

{¶ 48} We find that the trial court did not err in denying the Seibers' counterclaims. As discussed in the Seibers' first assignment of error, the Seibers and the Sumpters fraudulently induced Levy into the purchase agreement. The magistrate determined that as a result of this fraud, the purchase agreement should be rescinded. Rescission of a contract is an appropriate remedy when the contract is a product of fraud and no rights maybe based upon that contract. The Seibers' counterclaims were predicated upon the validity of the purchase agreement. Therefore, the rescission of the purchase agreement defeats the Seibers' counterclaims

### Sumpters' Promissory Note

{¶ 49} The Sumpters' counterclaim alleged Levy breached the promissory note when he failed to pay the Sumpters the amount owed to them under the note. The promissory note was entered into on June 3, 2014, contemporaneously with the closing of the purchase agreement. Multiple transactions occurred at the closing. The Sumpters were paid the balance owed to them for the sale of their shares in Double K to Levy. Double K purchased back the shares owned by the Roths for $11,000. Double K purchased these shares by way of a $10,000 loan from the Sumpters. This loan was evidenced by the promissory note and obligated the Seibers and Levy to pay the Sumpters $10,000. While the magistrate rescinded the purchase agreement and ordered the Seibers and the Sumpters to pay Levy $65,000, the magistrate found in favor of the Sumpters on their counterclaim and awarded them $10,000, to be paid by Levy. However, the trial court reversed this award due to the rescission of the purchase agreement.

{¶ 50} We find the trial court did not err in reversing the magistrate's decision awarding the Sumpters $10,000 under the promissory note. While the promissory note was separate from the purchase agreement, the note was made as a consequence of the purchase agreement. The promissory note was made to enable the Sumpters to exit the corporation and to allow Levy and the Seibers to obtain full ownership of the corporation. Without the promissory note, the purchase agreement would not have closed and the Sumpters would not have obtained the full amount due to them for their shares.

{¶ 51} Consequently, the Seibers' second assignment of error and the Sumpters' third assignment of error are overruled.

{¶ 52} Seibers' Assignment of Error No. 1:

{¶ 53} THE TRIAL COURT ERRED BY ADOPTING THE CONCLUSIONS OF LAW IN THE MAGISTRATE'S DECISION.

{¶ 54} Sumpters' Assignment of Error No. 4:

{¶ 55} THE TRIAL COURT ERRED IN AWARDING PUNITIVE DAMAGES.

{¶ 56} Sumpters' Assignment of Error No. 5:

{¶ 57} THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES.

{¶ 58} Levy's Cross-Assignment of Error No. 1:

{¶ 59} THE TRIAL COURT ERRED IN ALLOCATING ATTORNEY FEES WITHOUT DECIDING WHETHER THE REQUESTED FEES WERE REASONABLE AND NECESSARY, OR SHOULD BE ADJUSTED BASED UPON PROFESSIONAL CONDUCT RULE 1.5(A).

{¶ 60} Lastly, the parties challenge the award of punitive damages and attorney fees. The Seibers and the Sumpters argue the trial court erred in awarding punitive damages without making a finding of malice. Both the Sumpters and Levy maintain the attorney fees

award was in error, with the Sumpters arguing that there was not enough evidence to sustain the award and Levy arguing that the trial court erred in failing to grant all his attorney fees without conducting an analysis about the reasonableness of the fees.  We will address these arguments in turn.

### Punitive Damages

**{¶ 61}** We begin by noting our review regarding punitive damages is limited to the Seibers, as the Sumpters have forfeited any potential error by failing to object to the magistrate's award of punitive damages.  If a party has not objected to a factual finding or legal conclusion in accordance with Civ.R. 53(D)(3)(b), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion[.]"  Civ.R. 53(D)(3)(b)(iv).  However, even then, "unless the appellant argues a 'claim of plain error,' the appellant has waived the claimed errors not objected to below." *In re L.K.*, 12th Butler No. CA2014-06-145, 2015-Ohio-1091, ¶ 16.  The Sumpters have not argued on appeal how the punitive damages award constitutes plain error.  Therefore, their argument regarding punitive damages as applied to them is forfeited.[2]

**{¶ 62}** To be awarded punitive damages in cases alleging fraud, the plaintiff "must establish not only the elements of the tort itself, but in addition, must either show that the fraud is aggravated by the existence of malice or ill will or must demonstrate that the wrongdoing is particularly gross or egregious." *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12 Ohio St.3d 241 (1984), paragraph three of the syllabus.  *See* R.C.

---

2. Even if we were to review the Sumpters' assignment of error regarding the award of punitive damages upon a plain error standard they would not prevail. Civil plain error is an extremely deferential standard of review and its application is limited to "those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). This is not one of those "extremely rare cases" presenting "exceptional circumstances" where application of civil plain error is appropriate.

2315.21(C)(1).  Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.  *Preston v. Murty*, 32 Ohio St.3d 334, 335 (1987).  Egregious has been defined as "conspicuous for bad quality and taste." *Beaumont v. Albert*, 12th Dist. Preble No. CA2009-03-006, 2009-Ohio-6176, ¶ 32.

**{¶ 63}** In the present case, the magistrate awarded Levy $65,000 in actual damages, $1 in punitive damages, and reasonable attorney fees.  Specifically, in regards to the punitive damage award, the magistrate stated: "The Court finds on the evidence and record because of the *fraud and negligence claims*, [Levy] is entitled to punitive damages in the amount of $1.00 for a total of $65,001.00 plus reasonable attorney fees." (Emphasis added.)  The magistrate did not provide any other analysis regarding punitive damages or cite to any legal authority.  The trial court adopted the magistrate's findings.

**{¶ 64}** We find that the magistrate erred in granting punitive damages to Levy against the Seibers on the basis of Levy's fraud and negligence claims.  To be entitled to punitive damages in fraud cases, the plaintiff must show that the conduct was malicious, gross, or egregious.  Moreover, punitive damages may not be awarded based on mere negligence. *See Preston* at 335; *Estate of Beavers v. Knapp*, 175 Ohio App. 3d 758, 2008-Ohio-2023, ¶ 30 (10th Dist.).  An award of punitive damages, without more, should not be construed as a finding of malice or aggravated fraud sufficient to support the punitive damages award.  The trial court adopted the magistrate's decision regarding punitive damages.  Therefore, we find the trial court erred in granting Levy punitive damages without making the necessary findings.  On remand, the trial court must determine whether based upon the magistrate's findings of fact, the fraudulent conduct was malicious, gross or egregious to support an award of

punitive damages.

## Attorney Fees

**{¶ 65}** The parties challenge the trial court's award of attorney fees in the amount of $25,876.75 to Levy. We review an award of attorney fees for an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Id.*

**{¶ 66}** "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7. An exception to this rule exists when punitive damages are awarded in tort cases involving malice. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 17 (12th Dist.). If punitive damages are proper, reasonable attorney fees may be awarded as an element of compensatory damages. *Galmish v. Cicchini*, 90 Ohio St.3d 22, 35 (2000); *Roberts v. Mike's Trucking, Ltd.*, 12th Dist. Madison Nos. CA2013-04-011 and CA2013-04-014, 2014-Ohio-766, ¶ 26. A prevailing party has the burden of proving the reasonableness of the fees. *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 177 Ohio App.3d 7, 2008-Ohio-148, ¶ 45 (10th Dist.).

**{¶ 67}** When calculating attorney fees, a trial court is guided by a two-step determination. The court should first calculate the "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate and, second, decide whether to adjust that amount based on the factors listed in Prof.Cond.R. 1.5(a). *Bittner* at syllabus (applying predecessor to Prof.Cond.R. 1.5[a]); *Lamar Advantage GP Co. v. Patel*, 12th Dist. Warren No. CA2011-10-105, 2012-Ohio-3319, ¶ 46. Those factors include: (1) the

time and labor required, the novelty and difficulty of the questions involved, and the skill required to properly perform the legal service, (2) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the attorney, (3) the fee "customarily charged in the locality for similar legal services," (4) the amount involved, and the results obtained, (5) time limitations imposed by the client or the circumstances, (6) the nature and length of the professional relationship with the client, (7) the experience, reputation and ability of the lawyer, and (8) whether the fee is fixed or contingent. Prof.Cond.R. 1.5(a).

{¶ 68} To enable an appellate court to conduct a meaningful review, "the trial court must state the basis for the fee determination." *Bittner* at 146. In *Bittner*, the Ohio Supreme Court found that there was not enough information to conduct meaningful appellate review when the trial court did not award the full amount requested by the attorneys and did not state the factors it took into consideration in its partial award. *Id.*

{¶ 69} In the case at bar, the trial court granted Levy attorney fees after "having conducted an intensive review of the filings, considered the memoranda in support and in opposition, and holding a thorough review of the record prior to rendering its decision" in the amount of $25,876.75. The trial court did not conduct a hearing on attorney fees, provided no further explanation regarding its award of fees, the Prof.Cond.R. 1.5(a) factors, or the lodestar amount. Moreover, the trial court granted a portion of the attorney fees requested by Levy without providing explanation as to the reduction of the fees. Further, the trial court stated that the Seibers and the Sumpters should be jointly and severally liable for the full amount of the fees despite the fact that the Sumpters were not named as defendants in this matter until approximately four months after the litigation was commenced. Consequently, the trial court erred in failing to elucidate its basis for granting Levy's attorney fees in the amount

of $25,876.75.

{¶ 70} The award of attorney fees is vacated and the matter remanded to the trial court. We recognize that the award of attorney fees here is dependent upon an award of punitive damages. Therefore, our remand of the punitive damage award may render moot an award of attorney fees as against the Seibers should the trial court on remand find that there is no malice supporting an award of punitive damages. However, because the Sumpters forfeited any issue regarding the award of punitive damages, they remain subject to an award of attorney fees without regard to the trial court's ultimate resolution of the punitive damage issue.

{¶ 71} The Seibers' first assignment of error is partially sustained. The Sumpters' fourth assignment of error is overruled and the Sumpters' fifth assignment of error is sustained. Levy's cross-assignment of error is sustained.

## Conclusion

{¶ 72} Based on the foregoing, we affirm in part and reverse in part. We affirm the judgment in favor of Levy on his fraudulent inducement claim, the Seibers' counterclaims for breach of contract, breach of the duty of good faith and loyalty, fraudulent inducement, promissory estoppel, and negligent misrepresentation, and the Sumpters' breach of contract claim. We reverse the judgment in favor of Levy on his negligent misrepresentation claim. We also affirm the judgment awarding punitive damages against the Sumpters. However, we reverse the judgment adopting the punitive damages award against the Seibers and remand this cause to the trial court for a review of the award and to make the necessary findings. We also vacate the award of attorney fees and remand this cause to the trial court to consider anew an award of attorney fees based upon the record before it. In its consideration of an award of attorney fees the trial court shall calculate the "lodestar" amount of attorney fees,

- 20 -

engage in an analysis of the Prof.Cond.R. 1.5(a) factors and explain the basis for the amount of any attorney fees awarded to Levy.

{¶ 73} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

RINGLAND and HENDRICKSON, JJ., concur.